**In the Matter of A. W., Appellant.**

**No. 10397.**

District of Columbia Court of Appeals.

Argued Jan. 30, 1976.

Decided Jan. 30, 1976.

Concurring Opinion Feb. 9, 1976.

W. Anthony Fitch, Washington, D. C., for appellant.

Ted P. Gerarden, Asst. Corp. Counsel, Washington, D. C., for appellee. Louis P. Robbins, Acting Corp. Counsel, Richard W. Barton, and Michael J. Dowd, Jr., Asst. Corp. Counsels, Washington, D. C., for appellee.

Before FICKLING and NEBEKER, Associate Judges, and PAIR, Associate Judge, Retired.

### ORDER

PER CURIAM.

This interlocutory appeal came on for consideration on the record from the Superior Court, appellant's memorandum of law and motion for summary reversal of the order of the trial court on appeal herein and the court heard argument of counsel. Upon consideration thereof, it is

Ordered that appellant's motion be denied, and it is

Further ordered, there being no showing of an abuse of discretion by the trial judge, that the order on appeal herein be, and the same hereby is, affirmed.

NEBEKER, Associate Judge (concurring):

We have, by the above order, affirmed the trial court's order of pretrial detention of this 15-year-old juvenile pending trial on a delinquency petition charging heroin possession. In so doing, we have rejected his assertion that a prior conviction for burglary, and a pending charge for tampering with an automobile, cannot form a basis for pretrial commitment under a dangerousness standard. However, there is another aspect to this case which prompts me to write this opinion and to incorporate in it a part of a recent opinion written by Chief Judge Harold H. Greene of the Superior Court of the District of Columbia. *See* Appendix, *infra*.

The American society in general, and this jurisdiction in particular, suffers from repetitive criminal acts by malefactors who are on one form or another of post-conviction release. Too often those criminals are on probation or parole granted out of unrealistic or wishful thinking that such release is in the best interest of rehabilitation. Too often, either the safety of the community is ignored in making such judgments or it is put at such low priority as to be insulting to an ordered society.

As in many cases, this defendant has been arrested and charged not once, but twice, with crimes while on probation. To those who would say the presumption of innocence dictates that such release should not be terminated until conviction, I observe that they fail to understand the nature and function of the presumption and the status of a parolee or probationer.

We were told at oral argument that A. W.'s probation officer reported favorably on his probationary performance on the question of release in this case. This is incredible, particularly after the first arrest for tampering. It is also consistent with the shocking and lethargic attitude revealed in the probation officer's failure to seek revocation of probation. It would also seem that the prosecution ought to take action to initiate revocation proceedings.

Chief Judge Greene's opinion addresses this problem in the context of an adult probationer. While he speaks only for himself, I commend that view to the attention of the trial court and to the Parole Board. Briefly, in the future, Chief Judge Greene will

combine an initial probable cause preliminary hearing with a preliminary hearing on probation revocation rather than delay the latter step and face questions of bail and potential risk to the community.

In this case, I would remand and require a prompt revocation hearing by the exercise of our supervisory power over the administration of criminal justice. I recognize that such a step might be viewed as an encroachment on sentencing discretion, but I view inaction on revocation as a complete failure to exercise such responsibility at the expense of community security. *Cf. Leach v. United States*, 118 U.S.App.D.C. 197, 200, 203, 334 F.2d 945, 948, 951 (1964). In any event, a far better way to treat the problem of recidivist parolees and probationers is for the Parole Board and the trial court judges to adopt a policy and rules as Chief Judge Greene has done. I specifically join him in his tempered condemnation of those timid officials with parole and probation authority, who, at great risk and expense to the community, await a conviction (and often an appeal) before discharging their responsibility. The public has every right to expect more from them and it is unfortunate that this court may have to contemplate forcing such sluggish machinery into responsible motion.

### APPENDIX

### SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

Criminal No. 9956–75

UNITED STATES OF AMERICA

v.

WARREN A. PETERS

### OPINION

This case involves a proceeding to revoke defendant's probation because of the alleged commission of new offenses for which he has been arrested and indicted by the grand jury.

Concern has not infrequently been expressed about the fact that no action is taken by the authorities when individuals on probation or parole are rearrested for new offenses. On the other hand, it has been suggested by some that probation or parole should never be revoked on the basis of the alleged commission of a new offense until after a criminal trial for and conviction of that offense, and that in the meantime—for weeks or months—the probationer or parolee must be permitted to remain at large.[1]

In practice, most decisions in this Court as to revocation following a probationer's rearrest appear to be deferred until after the trial on the new criminal charges. In the relatively small number of revocations that do occur pretrial, the order of revocation is almost always based on technical violations of probation (such as failure to report to the probation officer) rather than on the new charges.

This practice is troublesome. The Court's real concern in such cases is usually with the danger the probationer might present to the community, as indicated by his rearrest, rather than with the technical violations. Indeed, most of these revocations would never occur were it not for the rearrest, and similarly, most technical violations do not result in revocation unless they are accompanied by a new criminal charge. Under these circumstances, a revocation based on technical violations effectively precludes the probationer from challenging the true grounds for his revocation, and it leaves the judicial system open to a charge of resort to subterfuge.

In my judgment, procedural means should be available which will provide adequate protection to the community, while at the same time ensuring the probationer's right to a fair revocation proceeding. Thus, the delineation of reasonable guidelines for revocation proceedings following a probationer's rearrest is a matter of obvious importance to the administration of

---

1. Unless, of course, he is detainable for other reasons.

justice in the District of Columbia, particularly since as many as one thousand Superior Court probationers are arrested annually on new charges. This case presents an appropriate opportunity for a resolution of this issue.

## I

On October 22, 1975, a fire occurred at 1200 Delaware Avenue, S.W., in the District of Columbia. When firemen arrived at the scene, two persons were found stabbed to death in the apartment where the fire occurred. Four men were subsequently arrested, including the defendant, and charged with murder and arson (Crim. No. 83965–75).

At the time of his arrest for this crime, the defendant was on probation from this Court. Specifically, he had been found guilty on April 30, 1975, of assaulting a fireman (D.C.Code § 22–505) and had been sentenced on August 20, 1975, to a term of imprisonment of one to five years. The execution of all but six months of that sentence was suspended, and defendant was placed on probation for a period of five years to follow the six-month period of incarceration. Defendant was given credit for his pretrial incarceration, and he was

accordingly released from confinement on August 20, 1975. His probationary term began to run as of that date.

At defendant's presentment following his arrest on the current charges (Crim. No. 83965–75), he was ordered held for five days without bond, pending the initiation of probation revocation proceedings, under the authority of D.C.Code § 23–1322(e). A hearing was held prior to the expiration of the five-day hold, on October 29, 1975, and defendant was advised that his probation might be revoked because (1) he had never reported to the probation authorities following his release,[2] and (2) he had committed the offenses with which he is currently charged.[3] A revocation hearing was scheduled for November 4, 1975.[4]

On October 31, 1975, a preliminary hearing was held on the murder and arson charges. At that hearing, the sole government witness was a police officer, who testified to the eyewitness observations of others concerning the current offenses. At the completion of the hearing, probable cause was found, and the case was referred to the grand jury for its consideration. On December 9, 1975, the grand jury returned an indictment, charging the defendant with murder, armed robbery, arson, and related offenses.

2. That charge was subsequently dropped when it was determined that defendant had not been specifically instructed to report to the probation authorities following his release.

3. ". . . we consider it to be without question, that there is implied within every grant of probation a condition that the probationer not violate the law while on probation." *Wright v. United States*, 315 A.2d 839 at 842, n. 7 (D.C.App.1974). See also *Roberson v. Connecticut*, 501 F.2d 305, 308 (2d Cir. 1974), where the court said, "[i]t is universally held that the commission of a felony violates a condition inherent in every probation order."

4. Bond was set at $100,000 on the current charges of murder and arson, and at $1,000 surety on the charge of probation violation. The high money bond on the new charges was based primarily upon defendant's prior record of abscondances from the Cedar Knoll institution while he was incarcerated there as

a juvenile and his failure to appear for a trial in 1973, and secondarily on the gravity of the current charges and the fact that he was on probation at the time of the commission of the alleged offenses. In the absence of an established record of unreliability with respect to appearance such as has been found with respect to this defendant, a high money bond could obviously not be justified. *Jones v. United States*, D.C.App., 347 A.2d 399 (1975). Thus, while in this case the defendant may, as a practical matter, have been removed from the community pending trial by the high money bond itself, in the ordinary case, where there is no demonstrable risk of flight, an individual charged with extremely serious offenses allegedly committed while he was on probation or parole could validly be held, if at all, only on the basis of a five-day hold followed by a revocation of his probation or parole. See *Briscoe v. United States*, No. 5800 (D.C.App. May 11, 1971).

In the course of the probation revocation hearing held on November 4, 1975, the government suggested that the transcript of the preliminary hearing constituted a sufficient basis upon which to revoke the defendant's probation. Defendant, on the other hand, argued that his probation could not and should not be revoked at this time.

## II

It is established that a mere arrest for a subsequent offense cannot justify revocation of probation. See *United States v. Webster,* 161 U.S.App.D.C. 1, 492 F.2d 1048, 1051 (1974), where the court said that "It is not a ground for revocation that a probationer has merely been *charged* with a crime; on the other hand, it is not necessary that the ground be that the probationer has been *convicted* of a crime. Correctly stated, the issue is whether he *committed* a crime." This formulation appears to balance appropriately the interest of the community in protection from what has been characterized as the "revolving door" system of justice brought about by the bail laws (particularly as applied to individuals already on probation or parole), with the right of a defendant, consistent with the presumption of innocence, not to be incarcerated, absent risk of flight or non-appearance, on the basis of an arrest alone.

It is likewise established that a probationer who has been charged with a new crime, although presumed like all defendants to be innocent of that crime, stands in a different position than an accused who is not already under the Court's supervision. See *Wright v. United States, supra.*

When a probationer is arrested and charged with a new crime, particularly a serious one, society has the right to expect a prompt determination as to whether his probation should be revoked or continued.[5] On the other hand, the probationer has the right to fairness and accuracy in that determination. "Both the probationer . . . and the [government] have interests in the accurate finding of fact and the informed use of discretion—the probationer . . . to insure that his liberty is not unjustifiably taken away and the [government] to make certain that it is neither unnecessarily interrupting a successful effort at rehabilitation nor imprudently prejudicing the safety of the community. . . ." *Gagnon v. Scarpelli,* 411 U.S. 778, 785, 93 S.Ct. 1756, 1761, 36 L.Ed.2d 656 (1973).

Thus, the question is what procedure is appropriate, short of a verdict after a criminal trial, for determining whether a probationer has violated the law while on probation.

## III

In *Gagnon,* the Supreme Court held that for due process purposes there is no difference between revocation of parole and revocation of probation. Accordingly, said the Court, the procedural requirements for revocation of parole previously established in *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1971), are equally applicable to probation revocation proceedings. It follows that we must look initially to *Morrissey* for the appropriate procedure.

The Court there decided that two hearings must be held before parole may be revoked: an initial hearing, to determine "whether there is probable cause or reasonable ground to believe that the arrested

---

5. The American Bar Association Project on Standards for Criminal Justice takes the position that a proceeding to revoke probation solely upon the alleged commission of another crime ordinarily should not be initiated prior to the disposition of that charge. *ABA Project on Standards for Criminal Justice, Standards Relating to Probation,* § 5.3 (Approved Draft, 1970). However, the Standard also calls for pretrial detention without bail and without the initiation of revocation proceedings upon a finding of probable cause that another crime has been committed by the probationer, a practice which this Court has no statutory authority to follow.

parolee has committed acts which would constitute a violation of parole conditions" (408 U.S. at 485–6, 92 S.Ct. at 2602), and a final hearing, to determine whether the violation occurred, and if so, whether revocation is warranted. 408 U.S. at 487–8, 92 S.Ct. 2593.

Although the initial hearing may be informal, the probationer or parolee must have been given notice both of the hearing and of the alleged violations; he must be apprised of whatever evidence is introduced with respect to the probable cause determination; and he must be allowed to present evidence and to confront adverse witnesses, unless, in the opinion of the judge or hearing officer, there would be a specific risk of harm to any witness as a result of such confrontation. 408 U.S. at 487, 92 S.Ct. 2593.[6]

With respect to the final hearing, there must be (1) written notice to the defendant of the claimed violations, (2) disclosure to the probationer of all facts taken into account against him, (3) an opportunity to be heard and to present evidence, (4) an opportunity to confront and cross-examine witnesses, unless there is "good cause" shown for not disclosing a witness' identity, (5) a neutral hearing body, and (6) a written statement of the facts relied upon for the revocation of parole (or probation). 408 U.S. at 489, 92 S.Ct. 2593.

### IV

I am satisfied that the preliminary hearing held October 31, 1975, complied with the *Gagnon* and *Morrissey* requirements with regard to the first hearing. The defendant had notice of the charges against him;[7] he had the opportunity to present evidence before an independent fact-finder; and the requirement that there be a written report of the proceeding is satisfied by the transcript of the hearing. Since the pre-

liminary hearing judge (Judge Margaret Haywood) made a determination that disclosure of the identities of the eyewitnesses would present a danger to them, it was proper not to require them to testify at that stage of the proceedings.

The question remains whether the preliminary hearing in the criminal case also satisfied the *Gagnon* and *Morrissey* standards with respect to the second stage of probation revocation, that is, whether the Court may now revoke the defendant's probation solely on the basis of the transcript of that hearing. In my opinion, the Court has no such authority.

An affirmative finding upon a preliminary hearing in a criminal case establishes nothing more than probable cause that the defendant committed the particular offense. D.C.Sup.Ct.Crim.R. 5(c)(1). Yet as the Supreme Court made clear in *Morrissey*, 408 U.S. at 488, 92 S.Ct. at 2603, 33 L.Ed. 2d at 498, the final revocation hearing "must be the basis for more than determining probable cause; it must lead to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation." It follows that the finding of probable cause at the preliminary hearing held with respect to defendant's current charges does not constitute a sufficient foundation, without more, for a revocation of defendant's probation.

The government argues that, irrespective of the finding made at the preliminary hearing, this Court may take judicial notice of the testimony taken at that hearing and make the determination necessary to revoke the defendant's probation on the basis of that testimony. It is said in support of this position that the hearsay evidence of the police officer who testified at that hearing would be sufficient in itself for purposes of the final hearing, and that since such testi-

---

6. Further, a verbatim record must be made of the hearing or a written summary by the presiding official. *Morrissey, supra,* 408 U.S. at 487, 92 S.Ct. at 2593.

7. This notice was given to the defendant at the first revocation hearing held October 29, 1975, discussèd *supra.*

mony would be substantially identical to that given at the preliminary hearing, it would be wasteful of the Court's time to require him to testify again.

The D.C. Court of Appeals stated recently, in *Wright v. United States, supra,* 315 A.2d at 841, that probation "must not be revoked except after the exercise of informed discretion based upon a hearing in accordance with due process requirements." Thus, the question is whether this Court could exercise "informed discretion . . . in accordance with due process [standards]" by revoking probation on the basis of testimony given before another judicial officer.

*Birzon v. King,* 469 F.2d 1241 (2d Cir. 1972), is instructive on this point. There, an individual's parole had been revoked on the basis of a parole officer's report containing information received from anonymous informants. The U.S. Court of Appeals for the Second Circuit held that this procedure violated the parolee's due process rights. In its view, the U.S. Board of Parole should have received the information directly from the informants, though not necessarily in the presence of the parolee, instead of relying solely upon the parole officer's report. Only on that basis, said the court, could the Board have reached its own conclusion about the relative reliability of the informant's statements, and only thus could it have drawn its own conclusions about the claims of potential danger to the informants if the parolee were allowed to confront them (468 F.2d at 1244–45). I agree with the reasoning of the *Birzon* court and will follow its ruling. It would in my view be inconsistent with due process for this Court to revoke probation (with the consequence of the confinement of defendant for a possible maximum

of five years) on the basis of the transcript of the testimony of a police officer, whom this Court did not itself hear, and who did nothing more than to relate the stories of others who were not produced.

If the government wishes to present the testimony of the police officer who testified at the defendant's preliminary hearing, it will be necessary to provide the defendant, at the actual revocation hearing, at a minimum, with a further opportunity to cross-examine the officer regarding that testimony, particularly since the opportunity to examine the officer at the preliminary hearing was too limited to satisfy the *Morrissey* requirements (408 U.S. at 489, 92 S.Ct. at 2604, 33 L.Ed.2d at 499).[8] Moreover, as will be discussed *infra* (p. 695), it may well be that at the final revocation hearing the prosecution will have to produce also the witnesses to the event who were not present at the preliminary hearing.

V

While the *Gagnon* and *Morrissey* decisions establish minimum due process requirements, they left the task of establishing specific procedures to legislative or judicial decision (*Morrissey, supra,* 408 U.S. at 488, 92 S.Ct. at 2604):

> We cannot write a code of procedure; that is the responsibility of each State. Most States have done so by legislation, others by judicial decision usually on due process grounds. Our task is limited to deciding the minimum requirements of due process.

The establishment of such procedures by this Court, in the absence of legislative direction or authoritative precedent from the D.C. Court of Appeals, is especially appropriate because of the uncertainty that

---

8. At the preliminary hearing, the Court sustained several objections made by the government to questions asked during the cross-examination of Officer McCloskey. This was appropriate because the preliminary hearing is limited in scope (see D.C.Sup.Ct.Crim.R. 5(c)(1)). However, as noted, a final revocation hearing is concerned with issues going beyond the question of probable cause. Accordingly, cross-examination that is properly excludable at a preliminary hearing on the theory that it is not relevant to the issue of probable cause may well not be subject to such exclusion at a final revocation hearing, under the *Morrissey* requirements.

exists generally in this jurisdiction on this subject. That uncertainty is vividly demonstrated by this proceeding which has already been the subject of four separate hearings, and in which at least one additional hearing will now have to be held. See also, the discussion at pp. 688–689, *supra*. While, of course, I have no authority to specify what procedures should be followed in the Superior Court generally with respect to such matters, the following represents my view as to the procedure most consistent with the purposes of the Supreme Court decisions referred to above, and it is the procedure I expect to follow hereafter. Moreover, to the extent that administrative measures are involved (see, *e. g.*, notes 12 and 17 *infra*, and the discussion at pp. 693–694), I will effect the necessary assignments and issue the appropriate instructions to non-judicial personnel to implement this procedural pattern.

First. Revocation proceedings are begun by probation officers from the Social Services Division of this Court. However, under the law only the U. S. Attorney is authorized to initiate a five-day hold. Thus, if the five-day-hold-probation-revocation procedure is to be meaningful, cooperation between the Social Services Division and the U. S. Attorney is essential.[9]

When a five-day hold is requested by the prosecutor, that request presumably expresses the interest of that official in the detention of the defendant, either because the prosecutor believes the accused to be a danger to the community or because he regards him as a poor risk for reappearance in Court. D.C.Code § 23–1322(e). Accordingly, at least in cases where the revo-

cation proceeding is initiated by way of the five-day hold procedure, it is the U. S. Attorney, through his assistants, who should present the pro-revocation position at the subsequent revocation hearings.[10] This is particularly appropriate since the hearings, discussed *infra*, require the presentation of evidence and the use of other legal skills not necessarily possessed by probation officers. The probation officer charged with the supervision of the defendant, and in appropriate cases the officer's supervisor, may of course be expected to be witnesses in the revocation proceeding.

Whenever the U. S. Attorney requests a five-day hold pursuant to D.C.Code § 23–1322(e), he should be prepared at the same time to state in open Court the alleged violations of probation upon which revocation of the defendant's probation will be sought. The Social Services Division of this Court will be expected to cooperate by having the appropriate probation officer available for consultation with the U. S. Attorney. Further, the defendant should be advised that an initial hearing will be held, as discussed *infra*, for the purpose of determining whether there is probable cause to believe that he committed the alleged probation violations. See 408 U.S. at 486–7, 92 S.Ct. 2593.

Second. In the event that a five-day hold is ordered and revocation proceedings are initiated, a combined hearing should be held prior to the end of that five-day period[11] before the judge who placed the defendant on probation.[12] This hearing would be both a preliminary hearing on the new charge, and the initial probation revocation hearing contemplated by the *Morrissey*

---

9. A five-day hold which is not followed by the appropriate determination as to whether revocation proceedings should be initiated serves only to detain the defendant for five days, in a manner contrary to the purpose of the statute.

10. The U. S. Attorney's traditional view has been that he has no formal responsibilities with respect to probation revocation proceedings. But see 28 U.S.C. § 547(1).

11. Unless the defendant agrees to a hearing at a later date.

12. In the event that the judge who granted probation is unavailable, the hearing should be held before the judge assigned to the Preliminary Hearing Branch. D.C.Code §. 11–908(a); Superior Court Criminal Rule 106.

and *Gagnon* decisions. At that hearing, the probationer may testify on his own behalf and he may produce other relevant evidence.[13] Information bearing upon the grounds for the ultimate revocation must be presented, but that information may consist of hearsay. Moreover, if the judge determines that an informant would be subject to risk of harm if his identity were disclosed, he need not be produced for cross-examination. *Morrissey, supra,* 408 U.S. at 487, 92 S.Ct. 2593.

Based on the information before him, the judge should make a determination, independent of his determination concerning probable cause with regard to the new criminal charge,[14] as to whether there is probable cause to believe that the probationer violated the conditions of his probation. *Morrissey, supra,* 408 U.S. at 487, 92 S.Ct. 2593. Whenever he finds such cause, the judge should state his reasons and indicate on what evidence he relied in making his determination. 408 U.S. at 487, 92 S. Ct. 2593.[15]

If probable cause is found, the judge may order the probationer held without bail beyond the period of the five-day hold pending the final determination as to revocation, provided that he makes a specific finding that the safety of the community requires detention. Such detention, as part of a revocation proceeding, is consistent with A.B.A. Standard § 5.3 Relating to Probation, *supra* note 5, and it was explicitly approved by the Supreme Court in *Morrissey* where the Court said (408 U.S. at 487, 92 S.Ct. at 2603):

> Such a determination [at the first hearing, that there is probable cause the probationer has violated the terms of his probation] would be sufficient to warrant the parolee's [or probationer's] detention [. . .] pending the final decision.

Third. The final revocation hearing should again be held before the probationary judge,[16] or if he is unavailable, before such judge as the Chief Judge may designate [17] either by general assignment or by specific designation. Although the probationer has the right to a prompt final hearing, particularly if he has been ordered detained,[18] that hearing should be stayed pending his trial on the criminal charges when the probationer requests such postponement.[19]

At the final revocation hearing, the probationer has the right (1) to disclosure of all facts used against him for revocation purposes, (2) to be present and to present witnesses and documentary evidence, and (3) to confront and cross-examine adverse witnesses. *Morrissey, supra,* 408 U.S. at

---

13. The probation revocation portion of the hearing, however, would normally be brief because of its preliminary nature.

14. Although the standards for probable cause may be identical for both purposes in many cases, the admissibility of evidence for the purpose of the finding with respect to revocation may be different from that concerning the probable cause determination with respect to the new criminal charge. See *Morrissey, supra,* 408 U.S. at 489, 92 S.Ct. 2593.

15. "[B]ut it should be remembered that this is not a final determination calling for 'formal findings of fact and conclusions of law.' No interest would be served by formalism in this process; informality will not lessen the utility of this inquiry in reducing the risk of error." *Morrissey, supra,* 408 U.S. at 487, 92 S.Ct. at 2603 (citation omitted).

16. Presumably, the probationer's counsel in his current criminal case will represent him with respect to the revocation hearing as well. See *Gagnon, supra,* 411 U.S. at 790, 93 S.Ct. 1756.

17. D.C.Code § 11–908(a); Superior Court Criminal Rule 106.

18. *Morrissey, supra,* 408 U.S. at 488, 92 S. Ct. 2593. It may be desirable for the Court to specify maximum time limitations by Rule of Court.

19. For a discussion of the reasons why such a stay might be appropriate, see the commentary following § 5.3, *ABA Project on Standards for Criminal Justice, Standards Relating to Probation* (Approved Draft, 1970).

489, 92 S.Ct. 2593.[20] However, should the U. S. Attorney proffer that such confrontation would subject a witness to undue and unusual danger, the Court should hear such representation *in camera,* and make a determination whether there is "good cause" to deny the probationer the opportunity to confront and cross-examine the witness, and if so, state why such "good cause" exists.[21]

Since the probationer's right to confront and cross-examine adverse witnesses is constitutionally mandated (408 U.S. at 489, 92 S.Ct. 2593), the standard of "good cause" for denial of this right, referred to in both the *Morrissey* and *Gagnon* decisions, would only be met where the government presents specific facts, such as threats by the probationer to other witnesses, which show that a confrontation would present a clear danger to the witness. The fact that the witness will also testify at the probationer's criminal trial could not, alone, justify a denial of the probationer's constitutional rights to confront his accuser. As Mr. Justice Brennan, concurring in *Morrissey, supra,* (408 U.S. at 491, 92 S.Ct. 2593 at 2605) stated, "For each hearing the [probationer] is entitled to . . . confront and cross-examine adverse witnesses, unless it is specifically found that a witness would thereby be exposed to a significant risk of harm."

Whenever the Court determines that a witness would be subjected to such undue and unusual danger that the probationer may not confront and cross-examine him, it should hear that witness' testimony *in camera,* and make an independent determination on the record as to the relative reliability of the informant's statement and those of the probationer and his witnesses (*Birzon v. King,* 469 F.2d 1241, 1244–45 (2d Cir. 1972), as well as of the weight to be given to the statements of the informant.

Should the Court find that the probationer violated the conditions of his probation, it will then have to determine further whether the probation should be revoked in the interests of justice, pursuant to D.C. Code § 24–104. The probationer "must have an opportunity to be heard and to show, if he can . . . that circumstances in mitigation suggest that the violation does not warrant revocation." *Morrissey, supra,* 408 U.S. at 488, 92 S.Ct. at 2603.[22]

VI

These procedures in my judgment protect the public safety by permitting the detention of a probationer for a limited period beyond the time of the five-day hold and by establishing a process for the revocation of probation short of a trial on the criminal charge, while at the same time they protect probationers from unwarranted revocations based either on mere arrests or on evidence lacking the requisite reliability.

20. "What is needed is an informal hearing structured to assure that the finding of a [probation] violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the [probationer's] behavior." Moreover, "[w]e emphasize there is no thought to equate this second stage of parole revocation to a criminal prosecution . . . the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." *Morrissey, supra,* 408 U.S. at 484, 489, 92 S.Ct. 2593, 2604.

21. If necessary, the statements of the reasons for the determination might be ordered sealed.

22. When probation is revoked solely on the basis of the commission of a new offense, and the probationer is subsequently acquitted of that offense after a trial, the Court might well consider, upon application by the probationer, whether to set aside its order of revocation. Although the standard of proof at the trial of a criminal charge is greater than at the revocation hearing, "it would be unseemly for the probation court to conclude counter to the result of a criminal trial, that an offense has occurred and that it could provide the basis for revocation." *ABA Project on Standards for Criminal Justice, Standards Relating to Probation,* § 5.3 Commentary at 64 (Approved Draft, 1970).

This case will be set down for a hearing in accordance with this opinion for December 18, 1975, at 9:45 a. m.

Harold H. Greene
Chief Judge

December 12, 1975