**Ronnie JOYNER, a/k/a Takla Sadeo Tamrat, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 86–780.

District of Columbia Court of Appeals.

Argued March 9, 1988.

Decided April 15, 1988.

Sharon Styles, Public Defender Service, with whom James Klein, Jennifer P. Lyman, and Maureen Cannon, Public Defender Service, were on the brief, for appellant.

Clendon H. Lee, Jr., Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., at the time the brief was filed, and Michael W. Farrell, Asst. U.S. Atty., were on the brief, for appellee.

Before NEWMAN, TERRY and ROGERS, Associate Judges.

NEWMAN, Associate Judge:

Joyner was convicted of assault with intent to kill while armed, a separate offense of assault with a dangerous weapon, carrying a pistol without a license and possession of heroin with intent to distribute. On appeal, he contends the narcotics charge was improperly joined with other charges in violation of Super.Ct.Crim.R. 8(a); the court abused its discretion in denying severance under Super.Ct.Crim.R. 14; and the trial court erred in refusing to instruct on flight. We affirm.

The evidence presented at trial showed that Joyner became involved in an altercation with Howard Watson, Sr. and Howard Watson, Jr. near the Watson residence. During the altercation, Joyner took an automatic pistol from his pocket, pointed it at Watson, Jr. and pulled the trigger three times. Although the gun was loaded, it did not fire. Those present could hear the gun clicking as the trigger was pulled. Joyner fled and Watson, Jr. called the police. Moments thereafter and a very short distance from the Watson residence, Joyner was stopped by a police officer. While the officer was interrogating Joyner, Watson, Jr. approached and sought to resume the alter-

cation. Joyner picked up a piece of cinder block and threw it at Watson, Jr.; it missed him. Joyner was placed under arrest. A search of the vicinity for the pistol resulted in the discovery of a pistol, a small change purse, and a pink laundry slip in a yard about ten feet from where Joyner was arrested. The pistol was identified by the Watsons as the one used by Joyner in attempting to shoot Watson, Jr.; the pistol also bore Joyner's latent right thumb print. The change purse contained ten small plastic packets of heroin. The laundry ticket contained Joyner's name and address. At the arrest scene, Joyner admitted that the change purse was his but denied any knowledge of or possession of the pistol.

■ Prior to trial, Joyner moved to sever the drug charge from the remaining ones. He contended that there was a misjoinder of offenses under Super.Ct.Crim.R. 8(a). He further urged that even if there was not a misjoinder under Super.Ct.Crim.R. 8(a), he was entitled to a severance under Super.Ct.Crim.R. 14 from prejudicial joinder.[1] The trial court denied the motion. This ruling is challenged on this appeal.

Super.Ct.Crim.R. 8(a) provides:

> Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, or both, are of the same or similar character or are based on the same act or transaction or on 2 or more acts or transactions connected together or constituting parts of a common scheme or plan.

To decide this case, the parties agree that we must determine whether the drug offense and the others are "based on the same act or transaction" within the meaning of Rule 8(a).

■ Where permissible, joinder is favored because of the resultant judicial economy. *Arnold v. United States*, 511 A.2d 399 (D.C.1986); *Robinson v. United States*, 452 A.2d 354 (D.C.1982); *Johnson v. United States*, 398 A.2d 354 (D.C.1979).

However, where there is a misjoinder, as a matter of law, the court must grant the motion to sever; it has no discretion to exercise. *Ray v. United States*, 472 A.2d 854 (D.C.1984). Our review is de novo on this question of law. *Id.*

■ Where different types of contraband had been seized in a proper search of premises, courts have found joinder of different charges as to each type of contraband proper under Rule 8(a). *See, e.g., United States v. Davis*, 773 F.2d 1180 (11th Cir.1985); *United States v. Parks*, 531 F.2d 754 (5th Cir.1976). We see no basis for reaching a different result where the two types of contraband are seized from the person of the defendant during a lawful search; Joyner does not contend otherwise. Indeed, at oral argument, counsel for Joyner properly conceded that if immediately after attempting to shoot Watson, Jr., Joyner had been arrested, searched, and the gun and drugs seized, the joinder in this case would have been proper under Rule 8(a). The mere fact that Joyner was not arrested until several *moments* later and a *very short distance* away from the Watson home under circumstances where the evidence could lead one reasonably to believe that he had just abandoned the two items of contraband and the laundry slip does not seem to us to be a rational basis to hold this joinder improper. We decline to do so; the joinder was proper under Super.Ct. Crim.R. 8(a).

■ Joyner also contends the trial court abused its authority in denying severance sought under Super.Ct.Crim.R. 14. That rule reads:

> If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the Court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. In ruling on a motion by a de-

---

1. Super.Ct.Crim.R. 8(a) and 14 are virtually identical to Fed.R.Crim.P. 8(a) and 14. Where this is so, federal appellate court construction of comparable federal rules is persuasive authority in interpreting local rules. *See Tupling v. Britton*, 411 A.2d 349 (D.C.1980).

**460**

fendant for severance the Court may order the prosecutor to deliver to the Court for inspection in camera any statements or confessions made by the defendants which the government intends to introduce in evidence at trial.

Where counts (or defendants) are properly joined, a motion to sever under Rule 14 is committed to the discretion of the trial court. *Arnold, supra; Johnson, supra.* We will reverse only for an abuse of discretion. *See Arnold, supra; Winestock v. United States*, 429 A.2d 519 (D.C.1981); *Johnson, supra.* We have considered Joyner's specific claims of prejudice resulting from the joinder which he claims show the trial court abused its discretion in denying the motion to sever; we find no merit to his contention.

 Joyner's last claim is that the trial court erred in refusing to give an instruction on flight. Prior to closing argument, the trial court conferred with counsel to determine what instructions would be given. Neither side requested a "flight" instruction nor did the court *sua sponte* indicate an intention to give one. In the closing and rebuttal arguments of the government, the prosecutor characterized the departure of Joyner from the scene of the Watson home as "flight" in the face of the arriving police officer, which showed a consciousness of guilt. At the conclusion of all argument, but before the court had instructed the jury, Joyner requested that the trial court include the standard instruction on flight with its other instructions to be given to the jury.[2] The trial judge refused to do so, saying the request was not timely under Super.Ct.Crim.R. 30. That rule provides that a request for instructions shall be filed "at the close of the evidence...." *Id.* It further provides that "[n]o party may assign as error any ... [instructional matter to which he has not objected] before the jury retires to consider its verdict...." *Id.* We need not pause to determine whether the trial court correctly determined the request to be untimely. Any error was harmless.

2. The trial judge stated that she would do so if the government consented; the government ob-

 We do note that we see no reason why the court declined to give the instruction. Concededly, counsel for Joyner probably should have anticipated the government would make a "flight" argument and thus should have requested a "flight" instruction sooner. However, a review of the record gives no basis for believing that Joyner sought tactical advantage by delaying the instructional request. Likewise, a review of the government's closing arguments shows that flight was properly argued; we see no basis on which the government could claim it would be prejudiced by the belated request for the standard instruction. The request, moreover, preceded the commencement of the Court's final instructions to the jury. Under these circumstances, it is difficult to see the basis for the denial of the instructional request.

*Affirmed.*