**Jack A. ROPER, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 88–411.

District of Columbia Court of Appeals.

Argued June 29, 1989.

Decided Sept. 26, 1989.

Gretchen Franklin, Public Defender Service, with whom James Klein, Public Defender Service, and Henderson Hill, Public Defender Service, Washington, D.C., were on the brief, for appellant.

Judith Albert, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and Michael W. Farrell, Asst. U.S. Atty., Washington, D.C., at the time the brief was filed, were on the brief, for appellee.

Before MACK, FERREN and STEADMAN, Associate Judges.

PER CURIAM:

Appellant, Jack A. Roper, was charged by indictment with armed robbery, D.C. Code §§ 22–2901, –3202 (1981 & 1988 Supp.), and carrying a dangerous weapon (CDW), D.C.Code § 22–3204 (1981). He was tried before a jury and acquitted on the armed robbery charge but found guilty of CDW. On appeal, Roper asserts that his CDW conviction should be reversed because the two charges were impermissibly joined in violation of Super.Ct.Crim.R. 8(a).

Under the circumstances of this case, we agree.

## I.

The government introduced evidence tending to show that appellant had forcibly stolen a gold chain from the complaining witness, Dyneesha Johnson. Johnson testified that on the evening of December 30, 1987, Roper, someone she had known for a few years, called her and arranged to come to her house. Although she could not remember the exact time that Roper had arrived, Johnson estimated that it was 10:00 or 10:30 p.m. According to Johnson, Roper parked his car across the street from Johnson's home and honked the horn; Johnson left her house, walked over to the car, and got in. Johnson stated that the two talked for approximately five-to-ten minutes while sitting in the car. Roper then asked her to give him the gold necklace she was wearing. Johnson initially thought he was joking, but then, she said, Roper pulled out a gun, pointed it at her, and again demanded the necklace. Johnson testified that at this point she complied, removing the chain and handing it to Roper. She then went back into her house and told her mother that Roper had taken the necklace. Her mother, Constance Johnson, testified that she looked out the window and saw Roper running up the street, leaving his car behind. Constance Johnson further stated that appellant phoned later that evening to ask for time to replace the chain.

The government also called to the stand Sergeant Vincent Tolson of the Metropolitan Police Department. Sergeant Tolson testified that the next day, December 31, 1987, he went to the Reeves Center at 2000 14th Street, N.W. to get a shoe shine. At approximately 9:00 a.m., he entered the men's room and noticed what appeared to be the handle of a nine millimeter semiautomatic pistol protruding from the pocket of a tan coat on the floor of one of the stalls. Sergeant Tolson looked under the stall and saw the feet of someone inside. He then left the men's room and radioed for assistance. Two uniformed officers responded, and the three police officers arrested appellant inside the stall. They recovered a BB gun from the jacket pocket.[1]

Appellant testified in his own behalf at trial. He stated that Johnson had voluntarily lent him her chain when she discovered that his own necklace was broken, but that he later traded the chain for cocaine. When Johnson and her mother discovered that the chain was missing, appellant testified, they became very angry. Concerned about threats Constance Johnson had made to him, he placed the BB gun in his pocket the next day, he stated, for protection.[2]

Prior to trial, appellant filed a motion to sever the counts in the indictment, pursuant to Super.Ct.Crim.R. 8(a) and 14.[3] The trial court denied this motion.

---

1. At trial, Johnson identified the gun recovered from appellant as similar to the one appellant had allegedly used to rob her. She testified that the gun used in the robbery had been square, dark, and "medium or large size." She was impeached, however, with a previous statement she made to police that the gun had been small.

2. Appellant gave a similar explanation of his reason for carrying the BB gun to the police officers who arrested him at the Reeves Center. This statement, however, was suppressed by the trial court as taken in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and thus could be admitted only for impeachment of appellant if he took the witness stand. *See Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). Appellant has argued that, had the charges been severed, he would not have testified at the CDW trial, and thus this statement could not have been used against him.

3. Rule 8(a) governs the initial joinder of offenses in an indictment where there is a single defendant (in cases where there are two or more defendants, the narrower dictates of Rule 8(b) govern, regardless of whether the issue is joinder of defendants or joinder of offenses). *Ray v. United States*, 472 A.2d 854, 857 (D.C. 1984). Rule 8(a) provides as follows:

 Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

 Rule 14, in contrast, governs *situations where the offenses are properly joined under Rule 8, but where the potential prejudice from joinder is sufficiently great that severance is none-

## II.

 Under Rule 8(a), multiple charges may be tried together only where the offenses are (1) of the same or similar character; (2) are based on the same act or transaction; or (3) are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan. *See supra* note 3. Whether offenses can properly be joined under Rule 8 is a question of law, and our review of the matter is thus de novo. *Joyner v. United States,* 540 A.2d 457, 459 (D.C.1988); *Ray, supra* note 3, 472 A.2d at 857.

The government rests its argument that the charges in this case were properly joined solely on the provision of Rule 8(a) which allows for joinder of offenses "of the same or similar character." In interpreting this provision, courts have largely relied on common-sense definitions of the term "same or similar." Thus, we have suggested that offenses are of the same or similar character where the counts in the indictment "allege the same general kinds

of crimes."[4] *Winestock v. United States,* 429 A.2d 519, 524 (D.C.1981). In addition, one court has posited that "similar" means "'[n]early corresponding; resembling in many respects; somewhat alike; having a general likeness.'" *United States v. Werner,* 620 F.2d 922, 926 (2d Cir.1980) (quoting WEBSTER'S NEW INTERNATIONAL DICTIONARY (2d ed.)). Empirically, however, courts have, as a rule, permitted the joinder of offenses under the "same or similar" provision only where there is a substantial degree of similarity among the crimes charged.[5] We find no such substantial similarity present in the instant case, and, indeed, we fail to see how, using any reasonable definition, the two offenses at issue here could be construed as "the same or similar."

 Armed robbery is defined in this jurisdiction as "by force or violence ... tak[ing] from the person or immediate actual possession of another anything of value" while armed with a dangerous or dead-

---

theless justified. *Ray, supra,* 472 A.2d at 856. Thus, if and only if the requirements of Rule 8 are met, would a court go on to consider the provisions of Rule 14.

On appeal, appellant renews his claims both of misjoinder under Rule 8 and prejudicial joinder under Rule 14. Because we find the offenses were misjoined in violation of Rule 8, we do not reach his Rule 14 contention.

4. Super.Ct.Crim.R. 8 is identical to FED.R. CRIM.P. 8. Accordingly, we may look to federal court construction of the federal rule as persuasive authority in interpreting our local rule. *See Joyner, supra,* 540 A.2d at 459 n. 1; *Settles v. United States,* 522 A.2d 348, 352 n. 6 (D.C.1987).

5. *Compare, e.g., Winestock, supra,* 429 A.2d at 524–25 (two armed robberies which occurred within one hour of each other and only a few blocks apart found sufficiently similar to warrant joinder); *Samuels v. United States,* 385 A.2d 16, 18 (D.C.1978) (two armed robberies of cab drivers by a pair of women, approximately seven hours apart, were of same or similar character); *Bridges v. United States,* 381 A.2d 1073, 1075 (D.C.1977) (four rapes, committed in same area of city over period of six months and involving same modus operandi were of same or similar character), *cert. denied,* 439 U.S. 842, 99 S.Ct. 135, 58 L.Ed.2d 141 (1978); *United States v. Rodgers,* 732 F.2d 625, 629–30 (8th Cir.1984) (distribution of cocaine and possession of cocaine with intent to distribute offenses

"of the same type"); *Werner, supra,* 620 F.2d at 926–27 (two thefts of foreign currency and of currency and jewelry, respectively) (from same cargo building at airport and in which defendant in each case acted as "inside master-mind" were of the same or similar character, even though offenses were charged under different statutes and one theft involved violence while the other did not); and *Drew v. United States,* 118 U.S. App.D.C. 11, 13, 331 F.2d 85, 87 (1964) (robbery and attempted robbery of two stores in same chain, two-and-a-half weeks apart, were of same or similar character) *with United States v. Halper,* 590 F.2d 422, 431 (2d Cir.1978) (Medicaid fraud and income tax evasion not of same or similar character even though both charges, government alleged, involved defendant causing his employees to submit false information to government agencies); *United States v. Graci,* 504 F.2d 411, 412 (3d Cir.1974) (sale of stolen government property, which property happened to be drugs, and crime of delivery of drugs were not offenses of the same or similar character). *See also Blunt v. United States,* 131 U.S. App.D.C. 306, 311, 404 F.2d 1283, 1288 (1968) (forging checks and uttering checks offenses "of same character," and fraud based on wiring for money from same checking account "of similar character"; initial robbery of checkbook, however, of neither same nor similar character as other offenses), *cert. denied,* 394 U.S. 909, 89 S.Ct. 1021, 22 L.Ed.2d 221 (1969).

ly weapon. D.C.Code §§ 22–2901, –3202 (1981 & 1988 Supp.). The gravamen of the offense is that something is taken from a person by force. *See Ellis v. United States,* 395 A.2d 404, 413 (D.C.1978) ("The purpose of the armed robbery statute is to protect individuals from being unwillingly deprived of their personal property through the use of armed force."). In contrast, carrying a dangerous weapon consists of "carry[ing] either openly or concealed on or about [one's] person ... any deadly or dangerous weapon capable of being so concealed." D.C.Code § 22–3204 (1981). It is essentially a crime of possession, designed to keep such dangerous items off the street. *See Scott v. United States,* 243 A.2d 54, 56 (D.C.1968) (noting Congressional intent to "drastically tighten the ban on carrying dangerous weapons"). The basic natures of the offenses are thus dissimilar. The fact that the two crimes share only a single element—possession of a deadly or dangerous weapon—reinforces this conclusion.[6]

Nor is there anything about the particular facts of the crimes at issue here that leads us to believe that these two offenses, which are dissimilar in the abstract, are similar as manifested in this particular case.[7] The first incident involved the alleged theft, at gunpoint, of a gold chain from an acquaintance, while the second involved the possession of a BB gun in a public restroom.[8] Despite the government's strenuous arguments to the contrary, these crimes are simply not sufficiently similar to justify joinder under Rule 8(a).

### III.

Where offenses have been improperly joined under Rule 8, there is a "presumptive possibility of prejudice to the defendant." *Morris v. United States,* 548 A.2d 1383, 1387 (D.C.1988) (quoting *King v. United States,* 355 F.2d 700, 703 (1st Cir. 1966)). Nevertheless, we have held that misjoinder may be harmless error where "all or substantially all of the evidence of [one offense] would be admissible in a sep-

---

**6.** The elements of armed robbery are: (1) that the defendant took property of some value from the complainant against the will of the complainant; (2) that the defendant took possession of such property by force or violence, whether against resistance, or by sudden or stealthy seizure or snatching, or by putting the complainant in fear; (3) that the defendant took possession of such property from the person or immediate actual of the complainant; (4) that, after having so taken the property, the defendant carried it away; (5) that the defendant took such property and carried it away without right to do so and with specific intent to steal it; and (6) that, at the time of the commission of the offense, the defendant was armed with, or had readily available, a dangerous or deadly weapon (specifically including a pistol or imitation pistol). Criminal Jury Instructions for the District of Columbia, Nos. 4.61 & 4.03 (3d ed. 1978).

The elements of carrying a deadly or dangerous weapon are: (1) that the defendant carried, either openly or concealed on or about his person, any deadly or dangerous weapon capable of being so concealed; (2) that the defendant had the intent to do the acts which constitute the carrying of a deadly or dangerous weapon; and (3) that the purpose of carrying the instrument was its use as a deadly or dangerous weapon; the government, however, is not required to prove that the defendant had a specific intent to use the instrument unlawfully. Criminal Jury Instructions, No. 4.81.

The government argues that these offenses are similar in that each involves possession, and the use or potential use, of a dangerous weapon. As another court commented in a misjoinder case, "we consider this characterization of the essential nature of the charged offenses entirely too broad" to warrant a joint trial. *Halper, supra* note 5, 590 F.2d at 430. To accept the government's contention would mean that all crimes committed while armed, from burglaries to murders, could, theoretically, be joined as "the same or similar" offenses, however different they might otherwise be. We believe this result to be beyond the contemplation of Rule 8.

**7.** We note that, as an assertion of misjoinder under Rule 8 alleges a defect in the indictment, the similarity of offenses is most appropriately determined by the content of the indictment. *See Winestock v. United States, supra,* 429 A.2d at 524. Here, as in most cases, the indictment alleges only skeletal facts about the charged crimes.

**8.** The government places great emphasis on the fact that the same gun may have been involved in both offenses. Even assuming there was clear evidence that the same gun was involved, *see supra* note 1, we do not believe this is sufficient to make these two crimes similar for purposes of Rule 8(a).

arate trial of the other."[9] *Ray, supra,* 472 A.2d at 859; *accord Byrd, supra* note 9, 551 A.2d at 99; *Settles, supra* note 4, 522 A.2d at 354.

■■■ In determining whether evidence of the alleged armed robbery would be admissible in a trial on the CDW charge, we look to *Drew, supra* note 5, and its progeny.[10] Because of the strong possibility that the defendant will be unduly prejudiced by the introduction of "other crimes" evidence, *Drew* prohibits the use of such evidence except where it is admitted for "some substantial, legitimate purpose."[11] 118 U.S. App. D.C. at 15–16, 331 F.2d 89–90. In applying the dictates of *Drew,* we have pointed out four specific requirements for the admission of other crimes evidence: (1) there must be clear and convincing evidence that the defendant committed the other offense, *see Thompson v. United States,* 546 A.2d 414, 421 n.11 (D.C.1988); *Ali v. United States,* 520 A.2d 306, 310 & n.4 (D.C.1987); *United States v. Bussey,* 139 U.S. App. D.C. 268, 273, 432 F.2d 1330, 1335 (1970); (2) the other crimes evidence must be directed to a genuine, material and contested issue in the case, *Landrum v. United States,* 559 A.2d 1323, 1326 (D.C.

1989); *Thompson, supra,* 546 A.2d at 420; *Graves v. United States,* 515 A.2d 1136, 1140 (D.C.1986); (3) the evidence must be logically relevant to prove this issue for a reason other than its power to demonstrate criminal propensity, *Landrum, supra,* 559 A.2d at 1326; *Ali, supra,* 520 A.2d at 310 n.4; *Campbell v. United States,* 450 A.2d 428, 430 (D.C.1982); and (4) the evidence must be more probative than prejudicial, *e.g., Thompson, supra,* 546 A.2d at 420; *Campbell, supra,* 450 A.2d at 430. *See generally Bartley v. United States,* 530 A.2d 692, 700–01 (D.C.1987) (Mack, J., dissenting). We conclude, as a matter of law, that where appellant was acquitted of the armed robbery charge, there was not clear and convincing evidence that appellant had committed the other offense, and the first requirement for admissibility was therefore not met.

The reason for requiring that there be clear and convincing evidence that the defendant in fact committed the other offense should be obvious: if someone else committed the crime, or if no crime was committed, evidence of the other offense would have no relevance—and at the same time, might seriously prejudice the defendant.

**9.** While mutual admissibility of offenses has been our principal standard for gauging harmless error where there is misjoinder, mutual admissibility is not precisely coextensive with harmlessness. For instance, it has been suggested that misjoinder may also be harmless where the evidence of guilt presented by the government is overwhelming. *Byrd v. United States,* 551 A.2d 96, 99 n. 8 (1988); *Settles, supra* note 4, 522 A.2d at 356 n. 11; *see also United States v. Lane,* 474 U.S. 438, 449–50, 106 S.Ct. 725, 732–33, 88 L.Ed.2d 814 (1986) (holding that misjoinder requires reversal only where it "results in actual prejudice because it 'had substantial and injurious effect or influence in determining the jury's verdict.'" (quoting *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)). We note that this is clearly not the case here.

By the same token, however, there may be circumstances in which the two offenses would be mutually admissible, but where the error still cannot be considered harmless. While it has been said that where offenses are mutually admissible, "there can be no harm in trying the offenses together rather than successively, because in either event the jury will hear all about both crimes," *Ray, supra,* 472 A.2d at 859, this may, in fact, not be true in all cases. One

situation where this might not be so, for instance, would be in a case where the defendant wishes to testify as to one offense, but does not wish to testify as to another. If the charges are tried separately, he could choose to testify in the first trial without doing so in the second. If, on the other hand, the two charges were tried together, the defendant, desiring to testify as to the first offense, "may be coerced into testifying on the count upon which he wished to remain silent." *Cross v. United States,* 118 U.S. App.D.C. 324, 326, 335 F.2d 987, 989 (1964). The potential prejudice the defendant may thus suffer for having the charges tried together rather than apart exists regardless of whether the evidence of each crime would have been admissible in a trial of the other.

**10.** As appellant was acquitted of the armed robbery charge, we need not determine whether evidence of appellant's CDW offense would have been admissible in a separate trial for armed robbery.

**11.** Other crimes evidence may be admitted to show (1) motive, (2) intent, (3) the absence of mistake or accident, (4) a common scheme or plan, and (5) identity. *Drew, supra,* 118 U.S. App.D.C. at 16, 331 F.2d at 90.

*See Bartley, supra,* 530 A.2d at 701 (Mack, J., dissenting); 2 J. WEINSTEIN, EVIDENCE ¶ 404[10], at 404–69 (1989). Where the defendant has, prior to trial, been convicted of the other offense, this issue, of course, does not arise, for a trier-of-fact has already determined beyond a reasonable doubt that the defendant is guilty of the other crime. *See Thompson, supra,* 546 A.2d at 421 n. 11. On the other hand, where the defendant, in a previous trial, has been acquitted of the other offense, a number of courts have held that evidence of that offense cannot be used at trial. *E.g., United States v. Keller,* 624 F.2d 1154 (3d Cir.1980) (evidence inadmissible under doctrine of collateral estoppel); *United States v. Mespoulede,* 597 F.2d 329, 334 (2d Cir.1979) (same); *United States v. Day,* 192 U.S. App.D.C. 252, 259–60, 591 F.2d 861, 868–69 (1978) (same). *But see United States v. Riley,* 684 F.2d 542 (8th Cir.1982) (rejecting this analysis), *cert. denied,* 459 U.S. 1111, 103 S.Ct. 742, 74 L.Ed.2d 962 (1983). *See generally* 2 J. WEINSTEIN, EVIDENCE ¶ 404[10], at 404–74 to –75 (1989).

■ This court has never explicitly reached the latter issue. Nor have we, until today, had occasion to decide the related question of whether an acquittal on one or two jointly tried offenses necessarily means that the offense of which the defendant was acquitted would not have been admissible in a trial on the other offense, and thus precludes any improper Rule 8 joinder from being harmless. We recognize that guilt beyond a reasonable doubt is a higher standard of proof than is clear and convincing evidence, and thus, it is not inconsistent, in theory, to find that there is clear and convincing evidence that an individual committed a crime where the individual has been acquitted using the reason-

able doubt standard. Nonetheless, we find it disturbing, and fundamentally unfair, that one could be acquitted of a crime by the trier-of-fact, yet have it held that that evidence of that same charge would have been admissible against him in another trial. *Cf. United States v. Peters,* 103 Daily Wash.L.Rptr. 2217 (D.C. Super. Ct. Dec. 31, 1975), *set forth as appendix to In re A.W.,* 353 A.2d 686, 695 n. 22 (D.C.1976) (Nebeker, J., concurring) (suggesting that it would be "unseemly" for a court to revoke probation on the basis of an offense of which the probationer had been acquitted (citation omitted)). We hold, therefore, that where two or more offenses are misjoined under Rule 8, and the defendant is acquitted of one of those offenses, that the misjoinder cannot, at least under a theory of mutual admissibility, be held to be harmless.[12]

Accordingly, we find the misjoinder of offenses in this case to be reversible error.

*Reversed and remanded.*

MACK, Associate Judge, concurring:

I join fully in the court's opinion. I would only add that I also believe that evidence of the armed robbery is not relevant to prove that appellant carried a dangerous weapon beyond its power to generate an inference of propensity and so fails to meet the third requirement for admissibility. *See ante* at 731.

"It is a principle of long standing in our law that evidence of one crime is inadmissible to prove *disposition* to commit crime...." *Drew v. United States,* 118 U.S. App.D.C. 11, 15, 331 F.2d 85, 89 (1964) (emphasis in original). This so-called "propensity rule" is designed to insure that a defendant is convicted only because he is guilty of the crime charged and not because he may have engaged in other crimi-

---

12. It should be clear that we are not, in this case, examining an acquittal's effect on the propriety of the initial joinder in this case. *See generally* 8 MOORE'S FEDERAL PRACTICE ¶ 8.06[3] (2d ed. 1989) (discussing retroactive misjoinder), and cases cited therein. Had appellant been found guilty of both charges in this case, it would not have changed the fact that these two offenses could not have been properly joined under the provisions of Rule 8(a). We decide only that where the offenses were improperly joined initially, that this misjoinder cannot be held harmless if the defendant is acquitted of one of the crimes.

Similarly, we do not reach the issue of what impact, if any, an acquittal would have on our analysis of whether a trial court has abused its discretion in denying severance under Rule 14.

nal activity, *see Thompson v. United States*, 546 A.2d 414, 419 (D.C.1988); *United States v. Myers*, 550 F.2d 1036, 1044 (5th Cir.1977) ("a defendant must be tried for what he did, not for who he is"). The rule is thus thought to be fundamental to the presumption of innocence guaranteed all criminal defendants. *Landrum v. United States*, 559 A.2d 1323, 1327 (D.C. 1989); *Thompson, supra*, 546 A.2d at 419; *Campbell v. United States*, 450 A.2d 428, 430 (D.C.1982).

Here, the government contends that evidence of the armed robbery would be relevant in the CDW trial to show intent or motive. We noted in *Thompson, supra*, however, that in many cases, "it is difficult or impossible to differentiate between the intent to do an act and the predisposition to do it," 546 A.2d at 420, and explained that "[w]here evidence of prior crimes can become probative with respect to intent only after an inference of predisposition has been drawn, the argument for admission is at its weakest, for the distinction between intent and predisposition then becomes ephemeral." *Id.* at 421. In *Thompson*, the defendant (having been the passenger in a car in which twenty-seven packets of P.C.P.–laced marijuana were found beneath the passenger seat) was charged with possession of a controlled substance with intent to distribute, and the government asserted that evidence that the defendant had previously sold marijuana and P.C.P. was admissible as probative of the defendant's intent. In pointing out the problem with this argument, we concluded:

> There is no real connection between the offenses other than the allegation that they both spring from the defendant's predisposition to sell marijuana and P.C.P. Indeed, one cannot logically draw a connection between the two incidents without first assuming that, because Thompson was predisposed to sell in November 1985, he remained so predisposed in April 1986. Here, intent piggy-backs on predisposition.

*Id.* at 427 (citation omitted).[1]

In the present case, the government notes that a violation of the CDW statute requires that "the purpose of carrying the instrument was its use as a deadly or dangerous weapon," *see ante* note 6, and asserts that appellant's alleged use of the BB gun to commit a robbery the evening before tends to show that appellant did intend to use the gun as a weapon. For the armed robbery to be relevant to appellant's purpose in carrying the gun the next day, however, requires precisely the· inference of predisposition that we admonished against in *Thompson:* that is, that because Roper intended to use the BB gun as a weapon on one occasion that he also intended to use the BB gun as a weapon on a subsequent occasion.[2] This can be nothing but a propensity argument.[3]

---

1. There are, of course, cases in which other crimes evidence may be relevant to intent without any inference of predisposition. As an example, *Thompson* cites *United States v. Payne*, 256 U.S. App.D.C. 358, 805 F.2d 1062 (1986), in which the defendants had been charged with possession of a controlled substance with intent to distribute. There, the court upheld the admission of evidence of guns found in the defendant's apartment as relevant to defendant's intent, on the theory that a person dealing in narcotics was more likely to have such weapons than an individual who simply possessed illegal drugs for his or her personal use. *See* 546 A.2d at 421–22.

2. Indeed, the prosecutor argued this theory repeatedly to the jury:

 > [T]he reason why he has this gun is also gleaned from what he had the gun for the night before. What did he use the gun for nine hours earlier? He used it for an unlawful purpose, to rob somebody, to rob Dyneesha Johnson.
 >
 > \*　　\*　　\*　　\*　　\*　　\*
 >
 > Secondly, as to the carrying a dangerous weapon. The next day he's found with this weapon. Isn't it strange, lo and behold, this looks like the weapon that was used just hours before in the armed robbery. He's carrying a dangerous weapon at that point. He admits it. He was going to use it if need be. He already had used it in a dangerous and unlawful manner. He had used it to rob Dyneesha Johnson.
 >
 > \*　　\*　　\*　　\*　　\*　　\*
 >
 > [H]is intent with this weapon was shown by what he did use the gun for nine hours before, to rob Dyneesha Johnson.

3. I note as apt *Thompson*'s counsel that courts must "be alert to sophisticated as well as simple-minded modes of evasion of the propensity rule," and should "view with a jaundiced eye

Because I can see no proper purpose for which evidence of the alleged armed robbery could have been introduced, I would hold that for this reason, as well as for those set forth in the opinion for the court, that, under *Drew*, the evidence would have been inadmissible in a separate trial for CDW. This being so, I agree that the misjoinder was not harmless.

evidence purportedly offered as relevant to some other issue but in reality bearing wholly

or primarily on the defendant's predisposition." 546 A.2d at 420.