James J. FRYE, Appellant,

v.

UNITED STATES, Appellee.

Nos. 02–CF–1233, 03–CO–
430 and 03–CO–1492.

District of Columbia Court of Appeals.

Argued Feb. 2, 2005.
Decided Oct. 14, 2005.

Walter S. Booth, Bethesda, MD, appointed by the court, for appellant.

Burke W. Kappler, Assistant United States Attorney, with whom Kenneth L. Wainstein, United States Attorney, and John R. Fisher, Barbara J. Valliere, and Catherine J. Motz, Assistant United States Attorneys, were on the brief, for appellee.

Before FARRELL, WAGNER * and RUIZ, Associate Judges.

WAGNER, Associate Judge:

Following a trial by jury, appellant, James J. Frye, was convicted of attempted aggravated assault while armed (attempted AAWA) (D.C.Code §§ 22–404.01, –4502, –1803) (2002) and assault with a dangerous weapon (ADW) (D.C.Code § 22–402) (2002). After he was sentenced, the trial court issued two orders correcting his sentence by adding a term of supervised release. Appellant appealed from his convictions and from the orders correcting

---

\* Judge Wagner was Chief Judge of this court at the time of argument. Her status changed to Associate Judge on August 6, 2005.

sentence, all of which were consolidated in this appeal. Appellant argues for reversal on the grounds that: (1) the trial court erred in allowing introduction of prior bad acts evidence; (2) the evidence was insufficient to convict him of attempted AAWA and ADW; (3) the offenses of ADW and attempted AAWA merge; (4) the prosecutor's improper remarks in opening statement and closing argument prejudiced his case; and (5) the trial court violated his right to be present at all proceedings by increasing his sentence in his absence. We conclude that attempted AAWA and ADW merge, requiring the vacation of one of the convictions, and that although appellant has a right to be present at re-sentencing, any error in that regard was harmless beyond a reasonable doubt. In all other respects, we affirm appellant's conviction.

### I. Factual Background

The following facts appeared from the evidence at trial. The complaining witness, Grace Butler, had a romantic relationship with appellant for about a year and a half that she severed in December 2001. Thereafter, appellant continued to call and find ways to encounter Ms. Butler. When appellant saw Ms. Butler, he would argue and sometimes strike her. During February 2002, appellant, apparently intoxicated, called the complainant on her cell phone and demanded to see her. He informed her that he knew that she was at work and where her vehicle was parked and that he would wait for her. Ms. Butler avoided appellant by working a double shift that evening. During that same month, Ms. Butler arrived home late, and appellant was waiting at her apartment complex where he blocked her vehicle with his van. Appellant then approached Ms. Butler, yelled at her for not returning his call, and accused her of lying when she explained that she had been visiting her daughter at the hospital. During their

conversation, appellant asked Ms. Butler to prepare his tax returns, as she had done previously. She agreed because she wanted him to leave her alone. At first, she opened the window of her vehicle to accept appellant's papers, and appellant promised that he would not hit her. However, when she opened the door of her truck, appellant grabbed her by the hair and struck her in the face before entering her truck where he continued to assault her physically and to abuse her verbally for the next four hours. Another incident occurred in February 2002, after Ms. Butler agreed to meet appellant. She conversed with him in his van, and appellant became upset and drove into an alley where he screamed at her and reached for a tire jack. Ms. Butler pleaded with appellant not to attack her. Appellant got out of the van, paced up and down the alley and threatened that he would wind up killing her. Only after Ms. Butler promised that she would call appellant did he let her go.

On March 6, 2002, Ms. Butler's birthday, she left home about 4:30 or 5:00 a.m. to meet her sister and go to Atlantic City. When she drove out of her apartment complex, she noticed what appeared to be appellant's van. When she turned onto Suitland Parkway, appellant pulled his vehicle into the lane next to her, yelled and motioned her to pull over. Appellant followed Ms. Butler, and she placed her phone on speaker and called the 911 emergency number and reported to the operator that appellant was following her. Ms. Butler turned off Suitland Parkway in order to get onto I–295 and stopped for a red light, and appellant pulled up next to her and ordered her to pull over or he would run into her. Ms. Butler pulled away when the light changed. Appellant aimed his van at her truck and forced her onto the shoulder of the road, but she did not stop. Appellant drove at Ms. Butler several times, ultimately moving his van in front of

her vehicle. Ms. Butler turned off at Pennsylvania Avenue after appellant passed the ramp for that exit, but he put his van in reverse and followed Ms. Butler down the ramp. At the merger area on Pennsylvania Avenue, appellant positioned his vehicle to the right of Ms. Butler's, blocking her forward movement and forcing her into oncoming traffic from the left. Ms. Butler testified that even through her closed window, she could hear appellant threatening to whip her, ram her and to kill her if he caught her. After merging onto Pennsylvania Avenue, Ms. Butler ran at least one traffic light in order to avoid appellant during the chase. After they had gone several additional blocks, the police pulled appellant over. Throughout the chase, Ms. Butler had kept her telephone line open to the police, and the officer on the other end told her to pull her vehicle over. She did so once the police were on the scene.

## II. Prior Bad Acts Evidence

### A. *Factual Context and Trial Court's Ruling*

Appellant argues that the trial court erred in allowing the introduction of evidence of prior bad acts by him against the complaining witness. He contends that this evidence was inadmissible because: (1) the purpose for which offered, identity, was not a material issue; (2) the prejudicial effect of the evidence outweighed its probative value; (3) the evidence was confusing and impossible for the jury to use for the limited purpose intended; and (4) no evidence supported the uncharged offenses except for the complainant's testimony. The government responds that the evidence was properly admitted under the motive and identity exceptions to the general rule precluding the admission of evidence of uncharged crimes against the accused. Further, the government contends that the trial court did not abuse its discretion in concluding that the evidence was

more probative than prejudicial and that the court provided an adequate limiting instruction for the jury's guidance in considering the evidence.

The challenged evidence consisted of complainant's account of appellant's conduct towards her during the month of February 2002. Specifically, he refers to her testimony describing the three separate incidents when appellant had: (1) pulled his van in front of her truck and blocked her before entering her vehicle and striking her about the face; (2) called her at work to tell her that he would be waiting for her at her car; and (3) threatened her with a tire jack. During cross-examination, defense counsel requested that the court give a limiting instruction on the use of this evidence, and the trial court gave the standard instruction, CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 2.51 (4th ed. 2002). Prior to her testimony, the trial court had ruled the evidence admissible to show motive and identity. At the close of the evidence, the trial court explained its ruling further. Specifically, the trial court stated that evidence of prior acts of hostility between spouses or individuals involved in a close personal relationship are admissible to prove a defendant's motive or identity without regard to the defense offered. The court determined that the evidence could be used to establish identity because: (1) appellant had denied involvement in the crime; (2) the evidence was relevant to the motivations of appellant and the complainant with respect to each other; (3) the evidence had been proven clearly and convincingly; and (4) the probative value of the evidence outweighed its prejudicial effect.

### B. *Applicable Legal Principles*

▮ Evidence of crimes, independent of the crime charged, are inadmissible to prove a defendant's disposition to commit the crime charged. *Drew v. United*

*States,* 118 U.S.App. D.C. 11, 15, 331 F.2d 85, 89 (1964). However, such evidence is admissible for legitimate purposes, such as to prove motive, intent, absence of mistake or accident, a common scheme or plan, or identity of the person charged with the crime on trial. 118 U.S.App. D.C. at 16, 331 F.2d at 90; *Hazel v. United States,* 599 A.2d 38, 41–42 (D.C.1991). Prior hostility between a couple, married or not, is admissible under the "motive" exception of *Drew.*[1] *Mitchell v. United States,* 629 A.2d 10, 13 & n. 6 (D.C.1993) (for purposes of the motive exception under *Drew,* "a significant relationship can be the functional equivalent of a marriage") (citing *Rink v. United States,* 388 A.2d 52, 56 n. 4 (D.C. 1978)); *see also (Arnold) Hill v. United States,* 600 A.2d 58, 61 (D.C.1991) (holding prior assaultive acts by the accused against the murder victim equally relevant as in marital homicides, where the accused and decedent had a "sufficiently close" relationship "over an extended period of time"). "Where one spouse or partner in a relationship commits a crime against the other, 'any fact or circumstance relating to ill-feeling; ill-treatment; jealousy; prior assaults; personal violence; threats; or any similar conduct or attitude by [the accused] are relevant to show *motive* and *malice* in such crimes.' " *Mitchell,* 629 A.2d at 13 (quoting *Gezmu v. United States,* 375 A.2d 520, 522 (D.C.1977)) (in turn quoting *Romero v. People,* 170 Colo. 234, 460 P.2d 784, 788 (1969) (emphasis in original; footnote omitted)); *Garibay v. United States,* 634 A.2d 946, 948 (D.C. 1993) (citation omitted) (holding appellant's prior assault of the victim properly admitted under the motive exception to *Drew* where self-defense claim made motive a material issue). We have also held that

motive evidence may be "highly probative" of the identity of the perpetrator of the offense. *Hazel,* 599 A.2d at 42 (upholding trial court's ruling admitting other crimes evidence related to "bad blood" motive as "relevant to the contested issue of [defendant's] identity" as the perpetrator of the crime charged). Prior instances of unlawful conduct may be admitted under a *Drew* exception although not previously adjudicated a crime. *Page v. United States,* 438 A.2d 195, 198 (D.C.1981) (citing *Willcher v. United States,* 408 A.2d 67, 75 (D.C.1979); *Light v. United States,* 360 A.2d 479 (D.C. 1976)) (explaining that "we [have] recognized that the *Drew* exception applied to unlawful activity that had not been adjudicated a crime").

 The trial court's determination of the relevance of prior evidence of bad acts is reviewed for an abuse of discretion. *See Hazel, supra,* 599 A.2d at 42; *Derrington v. United States,* 488 A.2d 1314, 1338 (D.C. 1985) (citation omitted), *cert. denied,* 486 U.S. 1009, 108 S.Ct. 1738, 100 L.Ed.2d 201 (1988). Even if otherwise meeting the test for admissibility as an exception to *Drew,* the evidence must still be excluded "if the danger of unfair prejudice [resulting from its admission] substantially outweighs its probative value." *Johnson v. United States,* 683 A.2d 1087, 1101 (D.C.1996) (en banc). "[T]he evaluation and weighing of evidence for relevance and potential prejudice is quintessentially a discretionary function of the trial court, and we owe a great degree of deference to its decision [with respect thereto]." *Id.* at 1095. Applying these principles, we consider appellant's challenge to the trial court's decision admitting prior bad acts evidence.

---

1. *"Drew* exceptions ... permit[ ] a party to offer evidence for specified limited purposes; such evidence is usually restricted to proof of motive, intent, absence of mistake or accident, common scheme or plan, or identity.

This list of exceptions is not exclusive." *Curry v. United States,* 793 A.2d 479, 483 (D.C. 2002) (citing *Drew,* 118 U.S.App. D.C. at 16, 331 F.2d at 90).

## C. *Analysis*

■ Appellant argues that the trial court abused its discretion in admitting evidence of the uncharged prior threats and assaultive conduct that the complaining witness testified appellant had committed against her. He contends that the evidence was inadmissible under the identity exception to *Drew* because his identity as the perpetrator was not in issue. The government contends that appellant placed his identity in issue by giving a false name when the police officer pulled him over right after the crime was committed. This argument carries little persuasive force given the facts presented here. As appellant points out, he and the complaining witness had known each other for some time. She reported the offense to the police while it was occurring, and the police pulled appellant over while he was following her in his vehicle. The police officer who first approached appellant at the end of the pursuit, Officer Robert Zurowski, testified that when he asked appellant what was going on, appellant responded that he was following a friend who was to do his taxes. According to Officer Zurowski, the van was registered in appellant's name, and the officer testified that he interviewed appellant and took down appellant's actual name, for his report. Before the presentation of evidence, defense counsel represented that appellant would not deny that he was on the scene, and therefore, identity was not in issue.

Of course, the government is required to prove beyond a reasonable doubt not only that a crime has been committed, but that the defendant on trial is the person who committed it. However, this court has held that the issue to which the other crimes evidence exception to *Drew* is addressed must be a genuine and material issue, and not merely a formal one. *Thompson v. United States,* 546 A.2d 414, 422–23 (D.C.1988) (citations omitted) (holding that where intent is not meaningfully controverted, evidence of other crimes to prove intent is prejudicial and inadmissible as a matter of law); *see also Green v. United States,* 580 A.2d 1325, 1327–28 (D.C.1990) (in a murder trial, admission of evidence of a defendant's prior assaults against victim properly admitted under *Drew* as proof of motive and identity where the defense challenged the defendant's identification by the accused and thus placed identity in issue). In the present case, the contested issue was not who committed the charged offenses, but whether appellant engaged in any acts that would constitute a crime. Therefore, admission of the evidence to prove only identity would have little, if any, probative value.

■ However, identity was not the only basis on which the trial court admitted the evidence. The evidence was offered and admitted to prove appellant's motive for assaulting the complainant with his van. The government argues that the evidence was properly admitted under the motive exception to *Drew*. "[T]he motive exception is somewhat broader [than the identity exception], allowing evidence of past hostility between the defendant and the victim to be admitted as proof of a motive to commit the particular hostile act against the same victim for which the defendant is on trial." *(Arnold) Hill, supra,* 600 A.2d at 62. "The key to admissibility under the motive exception ... is the fact that the defendant's prior criminal conduct was directed toward the same victim." *Id.* Thus, in *Hill,* this court upheld the admission of an uncharged assault on defendant's former girlfriend as probative evidence that he had a motive to kill her. *Id.* at 62–63. When the accused denies committing the crime, as he did in this case, " 'the prosecutor is permitted, as part of his effort to prove that the particular accused did commit the act, to prove that the

accused had a motive for [perpetrating the crime against the victim.]' " *Id.* at 61–62 (quoting *Collazo v. United States,* 90 U.S.App. D.C. 241, 247, 196 F.2d 573, 578, *cert. denied,* 343 U.S. 968, 72 S.Ct. 1065, 96 L.Ed. 1364 (1952)). Here, appellant's threats and assaultive conduct toward the complainant during the month or so preceding the offenses charged in this case, in an unsuccessful attempt to coerce her into continuing their relationship, is indicative of his motive to engage in the assaultive conduct against her that formed the basis for the charges. *See Mitchell, supra,* 629 A.2d at 13 (citing (*Arnold*) *Hill,* 600 A.2d at 61) (other citations omitted). Therefore, as the trial court found, the evidence was relevant as falling within the motive exception to *Drew.*

 Appellant argues that the evidence should have been excluded because no evidence supported the uncharged offenses except the complainant's own testimony. Even in a criminal trial, the evidence of a single eyewitness can be sufficient to prove beyond a reasonable doubt the charged offense. *See* (*Kevin*) *Hill v. United States,* 541 A.2d 1285, 1287 (D.C. 1988) (citing *Smith v. United States,* 389 A.2d 1356, 1358 n. 5 (D.C.), *cert. denied,* 439 U.S. 1048, 99 S.Ct. 726, 58 L.Ed.2d 707 (1978)) (other citations omitted). Here, the trial court found the complainant's testimony concerning appellant's prior misconduct was established clearly and convincingly. This court has held that an eyewitness' testimony of his observations of the prior bad acts meets the required standard of showing by clear and convincing evidence that the defendant was connected with the prior unlawful conduct for purposes of admission of evidence under a *Drew* exception. *Page, supra,* 438 A.2d at

198 (citing *United States v. Bussey,* 139 U.S.App.D.C. 268, 273, 432 F.2d 1330, 1335 (1970)). Therefore, we reject this aspect of appellant's challenge.

 Finally, appellant argues that the evidence should have been excluded because its probative value was minimal and its prejudicial effect was great. Even when evidence of other crimes is admissible under a *Drew* exception, it must still be excluded "if the danger of unfair prejudice that it poses substantially outweighs its probative value." *Johnson, supra,* 683 A.2d at 1101. In this case, the trial court was careful in exercising its discretion, balancing the probative value of the evidence against its potential for undue prejudice. *See Curry, supra,* 793 A.2d at 483 (citing (*Timothy*) *Robinson v. United States,* 623 A.2d 1234, 1238 (D.C.1993)). Further, the trial court properly instructed the jury of the limited purpose for which the evidence was being admitted. *See id.* at 486 (no abuse of discretion in admitting contested, relevant evidence where the trial court, recognizing the risk of prejudice, provided a limiting instruction). When clearly and understandably given, as was the case here, we presume that the limiting instructions "will reduce, if not dissipate, the danger of unfairness and prejudice." *Thompson, supra,* 546 A.2d at 426. Although conceding that the trial court provided a proper limiting instruction, appellant argues essentially that an untrained lay person would not be able to follow it. However, the jurors are presumed to follow the court's instructions. *Allen v. United States,* 603 A.2d 1219, 1224 (D.C.), *cert. denied,* 505 U.S. 1227, 112 S.Ct. 3050, 120 L.Ed.2d 916 (1992) (citation omitted). We discern no reason why the jury could not do so here.[2]

---

2. Appellant also argues that the evidence was more prejudicial than probative because the events were separated in time, place and location and did not follow the same pattern. The

introduction of the evidence was limited to a period of one month before the incidents giving rise to the charges in this case. The challenged evidence involved only three prior

### III. Evidentiary Sufficiency

Appellant argues that the evidence was insufficient to convict him of attempted AAWA and ADW. In support of this argument, appellant cites: (1) the lack of physical evidence that the cars collided, left skid marks or speeded as complainant described; (2) the absence of sounds on the recording of the 911 call consistent with the vehicle chase described by complainant; (3) the impossibility or improbability of a reasonable apprehension of fear being created in the complainant, since she was driving a large SUV, while appellant was driving a smaller van; and (4) the absence of any witness to the offenses other than the complainant.

 In reviewing claims of evidentiary insufficiency, this court must view the evidence in the light most favorable to the government, recognizing the province of the trier of fact to resolve questions of credibility and draw justifiable inferences. *Gibson v. United States*, 792 A.2d 1059, 1065 (D.C.), *cert. denied*, 536 U.S. 972, 122 S.Ct. 2692, 153 L.Ed.2d 861 (2002) (citations omitted); *McEachin v. United States*, 432 A.2d 1212, 1218 (D.C.1981) (citations omitted). We will reverse only if there is no evidence upon which a reasonable mind may fairly find guilt beyond a reasonable doubt. *Lewis v. United States*, 767 A.2d 219, 222 (D.C.2001) (citations omitted). The government must only present "at least some probative evidence on each of the essential elements of the crime." *Jennings v. United States*, 431 A.2d 552, 555 (D.C.1981), *cert. denied*, 457 U.S. 1135, 102 S.Ct. 2964, 73 L.Ed.2d 1353 (1982), (citing *Moore v. United States*, 388 A.2d 889 (D.C.1978)).

 To prove AAWA, the government must prove beyond a reasonable doubt that the accused, while armed (D.C.Code § 22–4502 (2002)): "(1) [b]y any means . . . knowingly or purposely cause[d] serious bodily injury to another person"; or (2) "[u]nder circumstances manifesting extreme indifference to human life, that person intentionally or knowingly engage[d] in conduct which create[d] a grave risk of serious bodily injury to another person, and thereby cause[d] serious bodily injury."[3] *Riddick, supra* note 3, 806 A.2d at 639 (citing D.C.Code § 22–404.01 (2001)). To prove an attempt to commit the offense of AAWA, the government must prove that the accused: (1) intended to commit that particular crime; (2) did some act towards its commission; and (3) and failed to consummate its commission. *Stepney v. United States*, 443 A.2d 555, 557 (D.C.1982) (citing *Marganella v. United States*, 268 A.2d 803, 804 (D.C.1970)). " '[M]ere preparation is not an attempt, but preparation may progress to the point of attempt.' " *Jones v. United States*, 386 A.2d 308, 312 n. 2 (D.C.1978) (quoting *Walker v. United States*, 248 A.2d 187, 188 (D.C.1968)) (citing *Sellers v. United States*, 131 A.2d 300, 301 (D.C.1957)) (other citations omitted). Whether the line between preparation and an attempt

---

incidents, which were not complex. The prior offenses were not of a magnitude far greater than the charged offenses. *But see United States v. Fortenberry,* 860 F.2d 628, 636 (5th Cir.1988) (holding prejudice from introduction of prior attacks substantially outweighed probative value because the prior offenses were of far greater magnitude than the offenses charged). Therefore, we find no error on this basis in the trial court's ruling admitting the evidence.

3. "Serious bodily injury" within the meaning of this element means

> [B]odily injury that involves a substantial risk of death, unconsciousness, extreme physical pain, protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ or mental faculty.

*Riddick v. United States,* 806 A.2d 631, 638 (D.C.2002) (quoting *Nixon v. United States,* 730 A.2d 145, 149 (D.C.1999)).

has been crossed "is a question of degree which can only be resolved on the basis of the facts in each individual case." *Id.* (citations omitted). To constitute an attempt, the act "must come dangerously close to completing the crime." CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 4.04 (4th ed. 2002).

▮▮▮ Viewing the evidence in the light most favorable to the government, we conclude that there was sufficient evidence from which a reasonable jury could find appellant guilty of attempted AAWA. The complaining witness testified that appellant drove his van at her vehicle and forced her onto the shoulder of the road. She also described how appellant tried to force her vehicle into oncoming traffic as he pursued her in heavy traffic. According to the complainant, appellant actually threatened to "ram" her, beat her and kill her. From this evidence, the jury could reasonably conclude that appellant knowingly and intentionally drove his vehicle in a manner that created a grave risk of serious bodily injury to Ms. Butler under circumstances showing an extreme indifference to human life, *see Riddick, supra* note 3, 806 A.2d at 639, and that he carried his intention within dangerous proximity of completing the intended crime. *See Jones, supra,* 386 A.2d at 312. Based on the evidence, the jury could also conclude reasonably that it was likely that the complainant would have sustained serious bodily injuries if the complainant had not successfully avoided a collision while fleeing from appellant, who had threatened her life and was, by his action, attempting to cause her to have an accident.

To be guilty of an attempt to commit AAWA, we do not think it necessary that serious bodily injury have actually resulted. Had that occurred, the crime of AAWA would have been completed. Here, appellant's action came dangerously close to completing the crime intended, crossing well beyond mere preparation to "within dangerous proximity of the criminal end sought to be attained." *Jones, supra,* 386 A.2d at 312 (citation omitted). "This 'dangerous proximity test'... does not require that appellant[ ] have commenced the last act sufficient to produce the crime but focuses instead on the proximity of appellant['s] behavior to the crime intended." *Id.* (citing *Commonwealth v. Peaslee,* 177 Mass. 267, 59 N.E. 55 (1901)) (other citation omitted). On the facts presented, a jury could find reasonably that appellant had committed acts to achieve his criminal end and came dangerously close to doing so, but for the fortuity that a serious vehicular collision, probable under the circumstances, did not occur.

▮▮▮ On the evidence presented, the jury also could find reasonably that appellant was guilty of ADW. The essential elements of ADW are: "(1) an attempt, with force or violence, to injure another person, or a menacing threat, which may or may not be accompanied by a specific intent to injure; (2) the apparent present ability to injure the victim; (3) a general intent to commit the act or acts which constitute the assault; and (4) the use of a dangerous weapon in committing the assault." [4] *Gathy, supra* note 4, 754 A.2d at 919 (citing *Williamson v. United States,* 445 A.2d 975, 978–79 (D.C.1982)). In this case, there was evidence that appellant intended to and did try to injure or frighten Ms. Butler by using his van as a weapon in a manner likely to cause her to have a car accident. Contrary to appellant's argument, the relative size of the vehicles is not determinative of whether his vehicle

---

4. We have held that ADW is a lesser-included offense of AAWA. *Gathy v. United States,* 754 A.2d 912, 919 (D.C.2000). The only element distinguishing these crimes is the additional requirement of serious bodily injury for proof of AAWA. *Id.* at 919–20.

constituted a dangerous weapon. "[A]n instrument capable of producing death or serious bodily injury by its manner of use qualifies as a dangerous weapon whether it is used to effect an attack or is handled with reckless disregard for the safety of others." *Powell v. United States*, 485 A.2d 596, 601 (D.C.1984) (citing *Parker v. United States*, 123 U.S.App. D.C. 343, 346, 359 F.2d 1009, 1012 (1966)). It was within the province of the jury to determine whether appellant's vehicle was a dangerous weapon. *Id.*; *Gathy*, 754 A.2d at 919 n. 8 (citation omitted) ("Whether a particular object is a dangerous weapon is generally a question for the jury."). The complainant's testimony concerning the manner in which appellant used his vehicle, trying to run her off the road and force her into oncoming traffic, over a substantial stretch of roadway was sufficient to permit the jury to find reasonably that appellant used his vehicle as a dangerous weapon in committing an assault against Ms. Butler.

■ Again, appellant argues the testimony of a single eyewitness is inadequate to support the convictions. He argues that a more stringent standard applies when reviewing the sufficiency of the evidence in a single eyewitness case. "A conviction based upon a single eyewitness identification will not be disturbed if a reasonable juror [or fact finder] could find the circumstances surrounding the identification convincing beyond a reasonable doubt." *(Kevin) Hill, supra*, 541 A.2d at 1287 (citing *Smith, supra*, 389 A.2d at 1358

n. 5) (other citation omitted). Appellant concedes that his identity as the perpetrator of the offense was not in issue. Rather, the question was whether he engaged in the conduct constituting the offenses. Essentially, appellant challenges the complainant's credibility, pointing out that she had a motive to exaggerate and that her testimony was not corroborated or supported by other evidence. Such factors are for the jury's consideration in assessing the credibility of the witness, which is the jury's function. *See Gibson, supra*, 792 A.2d at 1065 (citations omitted); *Lewis, supra*, 767 A.2d at 222 (citations omitted).

■ Similarly, appellant challenges the adequacy of the evidence to support the conviction based on a lack of corroborating physical evidence (*e.g.*, the lack of skid marks or sounds of a chase on the recording of the 911 call). To establish the charges against the defendant, "the prosecution must adduce at least some probative evidence on each of the essential elements of the crime." *Jennings v. United States*, 431 A.2d 552, 555 (D.C.1981) (citing *Moore v. United States*, 388 A.2d 889 (D.C.1978)). We cannot say that the government did not do so in light of the evidence as described above. Once the prosecution has presented a *prima facie* case, weighing the evidence is within the jury's province. *Ballard v. United States*, 430 A.2d 483, 487 (D.C.1981). Based on the record, the jury could rationally find appellant guilty of offenses of ADW and attempted AAWA.[5]

---

5. We reject appellant's argument that the complainant could have had no reasonable apprehension of danger because of the relative size of their two vehicles. First, this argument is irrelevant because the elements of attempted AAWA and ADW focus on the wrongful acts of the perpetrator of the offense rather than the state of mind of the victim. *See Riddick supra* note 3, 806 A.2d at 639 (elements of AAWA); *Stepney, supra*, 443 A.2d at 557 (describing the attempt to commit a crime); *Gathy, supra*, 754 A.2d at 919 (setting forth elements of ADW). In any event, the factual assumptions for this argument (*i.e.*, that there could be no perception of danger because the complainant was in a larger vehicle) are flawed. In this case, the reckless operation of the smaller vehicle, not its size, created a danger of an accident with the potential for causing death or serious bodily injury.

## IV. Merger of Offenses

Appellant argues that the offenses of assault with a dangerous weapon and attempted aggravated assault while armed merge because the elements of the offenses are the same. The government argues that each of these crimes are separate because each requires proof of an element that the other does not.

▮▮▮▮▮ "The Double Jeopardy Clause of the Fifth Amendment prohibits 'multiple punishments for the same offense.'" *Brown v. United States*, 795 A.2d 56, 63 (D.C.2002) (citations omitted). Its purpose, as related to multiple punishment, is to prevent punishment greater than the legislature intended for the offense. *Williams v. United States*, 569 A.2d 97, 98 (D.C.1989). In the absence of a clear legislative intent to the contrary, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one; is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932) (citation omitted). "In [this] jurisdiction, the *Blockburger* rule ... has been codified as an express declaration of legislative intent in D.C.Code § 23–112 [(2002).]" [6] *Byrd v. United States*, 598 A.2d 386, 389 (D.C.1991) (en banc) (citing *Whalen v. United States*, 445 U.S. 684, 691–92, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980)). In applying this *Blockburger* test, the focus is on the "statutorily-specified elements of each offense and not the specific facts of a given case[.]" *Id.* Therefore, we examine the elements of attempted AAWA and ADW to determine whether one requires proof of an element that the other does not.

▮▮▮▮▮ We have compared the elements of AAWA with ADW to determine whether the latter is a lesser-included offense of the former. *See Gathy, supra,* 754 A.2d at 919 (citations omitted). "'A crime can only be a lesser-included offense of another if its required proof contains some, but not all, of the elements of the greater offense.'" *Id.* (quoting *Wynn v. United States,* 538 A.2d 1139, 1145 (D.C. 1988)) (other citations omitted). In concluding that ADW is a lesser-included offense of AAWA, we determined that the only additional required element of proof for AAWA is serious bodily injury. *Id.* at 919–20. Appellant argues that because the distinguishing element, serious bodily injury, is not required to prove attempted AAWA, that count must merge with his ADW conviction. In other words, appellant contends that neither offense requires proof of an element that the other does not, and therefore, there is a merger of offenses under the *Blockburger* test.

This court was confronted with a similar issue in *Morris v. United States*, 622 A.2d 1116 (D.C.1993), a case decided after our en banc opinion in *Byrd, supra.* In *Morris*, we held that convictions for attempted armed robbery and assault with a dangerous weapon against the same victim as a part of the same criminal incident merged. 622 A.2d at 1129. Like this case, the conduct at issue violated two different statutes. In *Morris*, in determining that the offenses merged, we found persuasive that both offenses were accomplished by the exact same action, *i.e.*, placing a gun

6. D.C.Code § 23–112 provides:
A sentence imposed on a person for conviction of an offense shall, unless the court imposing such sentence expressly provides otherwise, run consecutively to any other sentence imposed on such person for conviction of an offense, whether or not the offense (1) arises out of another transaction, or (2) arises out of the same transaction and requires proof of a fact which the other does not.

against the victim and demanding his money. *Id.* The *Blockburger* analysis, for the offenses in *Morris* and those under consideration in this case is analogous, suggesting the rationality of the same outcome.[7] Here, as in *Morris*, the attempted AAWA and the ADW convictions were predicated on the exact same conduct, *i.e.*, appellant, using his vehicle as a dangerous weapon, drove it in manner that placed the complainant at grave risk of serious bodily injury.

In *Morris*, as in this case, the ADW was a lesser-included offense of the offense attempted. *See Gathy, supra* note 4, 754 A.2d at 919 (based upon a comparison of their elements, "ADW is a lesser included offense of aggravated assault while armed"); *Harling v. United States*, 460 A.2d 571, 574 (D.C.1983) (citations omitted) ("Assault with a dangerous weapon is a lesser included offense of armed robbery."). Therefore, a conviction for both arising out of the same incident cannot stand, and the lesser included offense must be vacated.[8] *See id.* (case remanded with instructions to vacate the ADW conviction where defendant was convicted of armed robbery arising out of same incident). However, in this case, the conviction was for the attempt to commit the greater offense, AAWA. The government argues that ADW is not a lesser-included offense of attempted AAWA and that the attempt element itself is the distinguishing element that prevents the offenses from merging. We turn to a closer examination of this argument.

The government contends that attempted AAWA can be accomplished without committing ADW because ADW requires that the assaultive act actually be committed, rather than merely intended. It argues that there is no requirement that the overt act constituting an attempt be an assaultive act directed at the intended victim. It contends that any overt act done with intent to commit AAWA that comes close to the completed crime satisfies the elements of attempted AAWA, although the act is not assaultive in nature. We do not find this argument persuasive. To prove an attempt to commit an offense, the government is required to prove that the defendant intended to commit a particular crime, did some act towards its commission, but failed to consummate the crime. *Stepney, supra*, 443 A.2d at 557; CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 4.04 (4th ed. 2002) (The elements of attempt are that the defendant: (1) specifically intended to commit a particular crime; and (2) did an act reasonably adapted to accomplishing that crime.). Whether an overt act sufficient to prove attempted AAWA can involve an action short of some assaultive conduct is doubtful. While the overt act necessary for proof of an attempted offense does not require that the defendant have begun the last act sufficient to produce the intended crime, the act must come within dangerous proximity of completion. *Jones, supra*, 386 A.2d at 312. Thus, for attempted AAWA, the government would have to prove that the accused did some act reasonably adapted to causing serious bodily injury to another person or "[u]nder circumstances manifesting extreme indifference to human life,... intentionally or

7. In determining the merger issue in *Morris*, although citing *Blockburger*, we did not engage in a strict *Blockburger* analysis, no doubt because both the government and appellant agreed that the offenses merged. *See id.*

8. Ordinarily, the problem is avoided because the jury is instructed to consider the greater offense first and to reach the lesser included offense only upon reaching a not guilty verdict on the greater offense. *See Byrd, supra*, 598 A.2d at 393 (quoting *Franklin v. United States*, 392 A.2d 516, 519 n. 3 (D.C.1978), *cert. denied*, 440 U.S. 948, 99 S.Ct. 1428, 59 L.Ed.2d 637 (1979)).

knowingly engage[d] in conduct that create[d] an extreme risk of serious bodily injury to another person. . . .' " *Riddick, supra* note 3, 806 A.2d at 639. That overt act must go beyond mere preparation. *See Jones, supra,* 386 A.2d at 312 (mere preparation to commit a crime is not an attempt). Short of some assaultive conduct or some other specific effort to inflict harm on the victim, it is difficult to discern any overt act which would cross the threshold from mere preparation to an actual attempt for AAWA.

The elements of proof that the jury was instructed to consider for attempted AAWA and ADW, in fact, overlap. As the trial court instructed, to establish the offense of ADW, the government is required to prove: (1) that the defendant made an attempt or effort with force or violence to injure another person; (2) that at the time, he had the present ability to injure that person; (3) that he made that attempt voluntarily and on purpose and not by mistake or accident; and (4) that the assault was committed with a dangerous weapon. *See* Criminal Jury Instructions for the District of Columbia, No. 4.07A (4th ed. 2002) (setting forth the foregoing elements for ADW (attempted-battery assault)).[9] The elements for the offense of attempted AAWA, and as given to the jury in this case, are: (1) that the defendant intended to commit the crime of aggravated assault (*i.e.,* under circumstances manifesting extreme indifference to human life, engaged in conduct that created a grave risk of serious bodily injury to another, causing serious bodily as a result); (2) that

he did an act reasonably adapted to accomplish that particular crime; and (3) that at the time of the commission of the offense, he was armed with a dangerous weapon. *See Riddick, supra* note 3, 806 A.2d at 639 (listing elements of aggravated assault); *Stepney, supra,* 443 A.2d at 557 (setting forth elements of an attempt to commit a crime). Serious bodily injury, the only element distinguishing ADW from AAWA, is not required to prove attempted AAWA. When resulting serious bodily injury is eliminated as an element of proof for attempted AAWA, that offense contains no element that ADW does not. Therefore, we conclude that the two offenses merge.

## V. Challenges to Prosecutor's Argument

 Appellant argues that the trial court plainly erred in failing to take corrective measures when the prosecutor made improper remarks during opening statement. Specifically, he contends that the prosecutor attempted to inflame the passions of the jury by describing appellant in opening statement as a "man who could not let go" and who had "almost cost the complaining witness her life." Additionally, appellant challenges as improper the prosecutor's reference to prior bad acts before the trial court had ruled on the issue and references in closing argument to appellant's statements that he would "ram" and "kill" the complaining witness.

 In reviewing claims of improper prosecutorial conduct, the court must first determine whether the remark was

---

9. The trial court also instructed on intent-to-frighten assault for which the elements are:

 1. [t]hat the defendant committed a threatening act that reasonably would create in another person a fear of immediate injury;
 2. [t]hat, when s/he committed the act, the defendant had the apparent present ability to injure that person; and

 3. [t]hat the defendant committed the act voluntarily, on purpose, and not by accident or mistake.

Criminal Jury Instructions for the District of Columbia, No. 4.06B (4th ed. 2002). For purposes of determining the merger issue, it makes no difference whether the battery or intent-to-frighten elements of assault are considered.

improper. *Irick v. United States*, 565 A.2d 26, 32 (D.C.1989). If the remarks are improper, then this court must consider the gravity of the improper comments, their relation to guilt, the effect of any corrective action taken, and the strength of the government's case. *Id.* Since no objections were made at trial, we review for plain error. *United States v. Olano*, 507 U.S. 725, 732–35, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Under that standard, to warrant reversal, appellant must show that the error resulted in a miscarriage of justice " 'or that the trial court's error seriously affected the fairness, integrity or public reputation of judicial proceedings.' " *Wilson v. United States*, 785 A.2d 321, 326 (D.C.2001) (quoting *Olano*, 507 U.S. at 736, 113 S.Ct. 1770) (other citations omitted).

 In opening statement, the parties are permitted to give a broad outline of the evidence expected to be presented at trial. *Bailey v. United States*, 831 A.2d 973, 981 (D.C.2003). Neither of the challenged statements in the prosecutor's opening went beyond permissible bounds. The prosecutor previewed what she expected the evidence to show concerning appellant's attempts to hold onto a relationship with the complainant and the conduct supporting the attempted aggravated assault charge. The use of the words "ram" and "kill" in closing argument were not improper because they were supported by the evidence. The complainant testified that appellant used those very words on the day of the offenses. The government is not required to sanitize the evidence or remove its emotional impact. *Irick, supra*, 565 A.2d at 36–37. Contrary to appellant's arguments, the complainant's account of the threatening statements that appellant made while pursuing her is not hearsay. *See Harris v. United States*, 834 A.2d 106, 116 (D.C.2003) (A party's own statements are admissible in evidence.) (citations omitted). Finally, we conclude that the trial court did not plainly err in failing

to strike the government's reference to the prior bad acts prior to the trial court's ruling and instruction. The trial court ruled prior to the prosecutor's opening statement that the government could introduce most of the prior bad acts evidence. Appellant has not demonstrated that the prosecutor strayed from the parameters of the trial court's ruling. Therefore, we find no error, and clearly no plain error, resulting from the mention of the prior bad acts evidence during the prosecutor's opening statement.

## VI. Claim of Denial of Right to be Present

Finally, appellant argues that the trial court violated his constitutional right to be present at all proceedings, including sentencing, by amending the judgment and commitment order, outside of his presence, to add a provision for supervised release to his sentence. Appellant had filed a motion for reduction of sentence. The trial court denied the motion, without a hearing. Explaining that the court's order of three years supervised release had not been reflected on the Judgment and Commitment Order, the court amended appellant's sentence to include a supervised release condition of three years. The court also provided in its order that "[i]f there is an objection to this amendment, defendant may file whatever motion he deems appropriate." Appellant filed no objection either *pro se* or through counsel. Subsequently, the trial court increased the time of supervised release from three to five years, again without a hearing. As reasons for its action, the trial court explained that "the supervised release statute D.C.Code § 24–403.01(b)(1), (b)(2)(A) (2004), mandates a period of five years supervised release." Before amending the sentence the second time, the trial court requested that the government and appellant address whether appellant's presence was required to impose the mandatory pe-

riod of supervised release. While the government and defense counsel agreed that appellant's presence was not required, appellant asserted in writing his right to be present at all case related proceedings, including sentencing.

"[A] defendant is constitutionally 'guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his [or her] presence would contribute to the fairness of the procedure.'" *Kimes v. United States*, 569 A.2d 104, 108 (D.C.1989) (quoting *Kentucky v. Stincer*, 482 U.S. 730, 745, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987)) (alterations in original). This includes the right to be present at sentencing. *United States v. Behrens*, 375 U.S. 162, 166, 84 S.Ct. 295, 11 L.Ed.2d 224 (1963) (holding that it is error to impose a final sentence in absence of the defendant and his counsel); *Kerns v. United States*, 551 A.2d 1336, 1337 (D.C.1989) (Re-sentencing is *de novo* after vacation of illegal sentence, and therefore, the defendant has a right to be present and to allocute.); Super. Ct.Crim. R. 43(a) ("The defendant shall be present... at every stage of the trial including ... the imposition of a sentence, except as otherwise provided by this Rule." [10]). This court has recognized that the right to be present upon the imposition of a sentence "is a fundamental [right] which implicates the due process clause." *Warrick v. United States*, 551 A.2d 1332, 1334 (D.C.1988) (citing *United States v. Gagnon*, 470 U.S. 522, 526, 105 S.Ct. 1482, 84 L.Ed.2d 486 (1985) (per curiam)) (other citations omitted). If a defendant is absent involuntarily, and a "constitutional right to be present is at issue, this court will reverse unless the government proves the defendant's absence was harmless beyond a reasonable doubt." *Kimes*, 569 A.2d at 110 (citing *Kleinbart v. United States*, 553 A.2d 1236, 1240 (D.C.1989)) (other citations omitted).

Appellant argues that his sentence was increased in violation of his right to be present twice, first by adding three years of supervised release and later by increasing the sentence to five years of supervised release. The government argues that the trial court simply corrected an illegal sentence, which it can do in appellant's absence without infringing upon any constitutionally or statutorily protected rights. Further, the government contends that the error, if any, was harmless beyond a reasonable doubt because the court was obligated to correct the sentence, and there was nothing that appellant could say or do to change that.

Although a defendant has a right to be present at sentencing, a defendant's presence is not required "[w]hen the proceeding involves a ... correction of sentence under [Super. Ct.Crim. R.] 35." Super. Ct.Crim. R. 43(c)(4); *Wells v. United States*, 469 A.2d 1248, 1250 (D.C.1983) (where the trial court vacated sentence for one count and reimposed the original sentences on other counts, defendant's presence not required for correction or reduction of sentence under Super. Ct.Crim. R. 35(a)) (citation omitted). Unlike this case, *Wells* resulted in a reduction of the defendant's sentence by three years. *Id.* at 1249. Generally, when the terms of the new sentence are made more onerous, a correction of sentence under Rule 35(a) will require the defendant's presence.[11]

---

**10.** A defendant's presence is not required "[w]hen the proceeding involves a reduction or correction of sentence under Rule 35." Super. Ct.Crim. R. 43(c)(4) (2002).

**11.** Federal Rule 35 is virtually identical to Super. Ct.Crim. R. 35(a); therefore, this court will look to federal cases interpreting the rule as persuasive authority for interpreting the local rule. *See Walker v. District of Columbia*, 656 A.2d 722, 725 (D.C.1995) (citation omitted).

*United States v. Pineda,* 988 F.2d 22, 23 (5th Cir.1993) (a correction of sentence under Rule 35 is not a re-sentencing requiring a defendant's presence provided the modification does not make the sentence more severe); *accord United States v. Jackson,* 923 F.2d 1494, 1497 (11th Cir. 1991); *Rust v. United States,* 725 F.2d 1153, 1154 (8th Cir.1984) (citation omitted). The imposition of an additional term of release added a more onerous condition. Therefore, these cases are persuasive authority supporting appellant's right to be present. The government argues that the imposition of a longer term upon correction under Rule 35 does not affect the analysis. It cites as authority for this argument *Prince v. United States,* 432 A.2d 720 (D.C.1981). However, *Prince* holds only that a sentence may be corrected under Rule 35 even if it increases the punishment. *Id.* at 721–22. It does not address whether a defendant has a right to be present for correction of sentence under the circumstances presented here.

 Finally, the government argues that since the trial court had no discretion but to correct the illegal sentence by imposing the mandatory period of supervised release, appellant's presence could not have affected the outcome. For this reason, it contends, appellant's presence was not required. The Supreme Court has stated that "the presence of a defendant is a condition of due process only to the extent that a fair and just hearing would be thwarted by his absence and to that extent only." *Gagnon, supra,* 470 U.S. at 526, 105 S.Ct. 1482 (citation omitted). The defendant has no right to be present "when presence would be useless, or the benefit but a shadow." *Snyder v. Massachusetts,* 291 U.S. 97, 106–07, 54 S.Ct. 330, 78 L.Ed. 674 (1934), *overruled on other grounds, Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964); *Kimes, supra,* 569 A.2d at 108 (summarizing a defendant's right to be present at criminal proceeding "critical to its outcome if his [or her] presence would contribute to the fairness of the procedure") (quoting *Stincer, supra,* 482 U.S. at 745, 107 S.Ct. 2658 (in turn quoting *Snyder,* 291 U.S. at 105–06, 54 S.Ct. 330)). The government is correct that the trial court had no alternative but to impose a five year period of supervised release as required by D.C.Code § 24–403.01(b)(1), (b)(2)(A). While the court had no discretion with respect to that aspect of the sentence, the court retained discretion to consider whether the length of incarceration previously imposed remained appropriate in light of the lengthy term of supervised release required. At a new sentencing hearing, appellant could have argued that a decrease in the time of incarceration was warranted because of the lengthy term of supervised release that had to follow. Thus, we do not agree that the circumstances left the trial court without discretion or appellant without any meaningful way to contribute to the fairness of the procedure. Under the circumstances, we conclude that appellant was entitled to an opportunity to allocute. *See Kerns, supra,* 551 A.2d at 1338. Nevertheless, the error was harmless in this case, *see Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), because: (1) the sentence correction affects only a mandatory release provision; (2) the trial court was aware of the requirement to impose a release term at the time of sentencing, being mistaken only as to its term; and (3) in denying the motion to reduce, the trial court made clear that the original sentence was lenient—leaving no reasonable possibility that the court would have reduced the term of incarceration further.

For the foregoing reasons, the case is remanded to the trial court with instructions to vacate the ADW conviction, the

merged offense. In all other respects, the judgment of the trial court is affirmed.

*So ordered.*