Nathaniel Ivan BACCHUS, Appellant,

v.

UNITED STATES, Appellee.

No. 06–CM–1263.

District of Columbia Court of Appeals.

Argued March 26, 2008.

Decided April 30, 2009.

Cedric Miller, Washington, for appellant.

Ademuyiwa Bamiduro, Assistant United States Attorney, with whom Jeffrey A. Taylor, United States Attorney, and Roy W. McLeese, III, Mary B. McCord, Amy Zubrensky, and Daria Zane, Assistant United States Attorneys, were on the brief, for appellee.

Before RUIZ, and BLACKBURNE–RIGSBY, Associate Judges and JOSEY–HERRING,* Associate Judge of the Superior Court of the District of Columbia.

JOSEY–HERRING, Associate Judge:

Following a bench trial, appellant Nathaniel Bacchus was found guilty of simple assault, second-degree theft, and destroying property, but was acquitted of violating a civil protection order ("CPO"). An unlawful entry charge was dismissed prior to trial.

On appeal, appellant contends that the trial court erred: (1) by admitting other crimes evidence relating to a prior arrest on May 31, 2005; (2) by admitting the testimony of a government witness who was seen prior to trial reviewing the grand jury transcript of the complaining witness' testimony; and (3) in finding that appellant destroyed the complaining witness'

---

* Sitting by designation pursuant to D.C.Code § 11–707(a)(2001).

cell phone. We affirm appellant's convictions.

## I. FACTUAL SUMMARY OF EVIDENCE AT TRIAL

The complaining witness, Yolanda Deloatch, and appellant were involved in a romantic relationship that lasted for three years and ended in 2005. After their relationship ended, appellant threatened and physically attacked Ms. Deloatch several times. According to Ms. Deloatch, one particular instance occurred on May 23, 2005 when appellant came to her home, argued with her, threatened to physically harm her, and, at one point, threatened to kill her. He also damaged property in her home (namely, a table, television, lamp and other items) and slashed her car tires. Based on this incident, appellant was arrested on May 31, 2005 and charged with assault and property damage offenses. On June 7, 2005, Ms. Deloatch obtained a CPO requiring appellant to stay 100 feet away from her. The criminal case against appellant was dismissed.

The following year another incident occurred between appellant and Ms. Deloatch, giving rise to the instant case. At trial, Ms. Deloatch testified that while driving home from work on May 1, 2006, she was talking on her cell phone with her friend and co-worker, Maria Gibson. When Ms. Deloatch arrived at her house, while still on the phone with Ms. Gibson, she saw appellant sitting on her front porch. As Ms. Deloatch walked toward her house, she told Ms. Gibson to stay on the phone because she feared that appellant would "start something" and, if he did, she wanted Ms. Gibson to call the police.

As Ms. Deloatch opened her front door, appellant cursed at her, called her names, and demanded to know why she had not returned his phone calls. Appellant then pushed Ms. Deloatch into the house and she fell. Ms. Gibson, who was still on the phone with Ms. Deloatch, testified that she heard "rustling and tussling." Ms. Gibson also stated that she heard Ms. Deloatch tell appellant to stop and heard Ms. Deloatch ask Ms. Gibson to call 911. Then the phone connection was lost and Ms. Gibson called the police.

According to Ms. Deloatch, the phone connection ended because, as appellant's tirade continued, she dropped her cell phone and appellant stomped on the phone and smashed it to pieces. Ms. Deloatch also stated that appellant eventually grabbed her purse, which contained $500 in cash, and ran outside the house. Ms. Deloatch ran to her car and attempted to follow appellant to get her purse back but was unable to catch up with him. Ms. Deloatch returned to her house and also called 911. The police came to the scene and interviewed her. While the police were there, appellant returned to the house and, as he was standing outside, Ms. Deloatch pointed him out to the police. Appellant ran away when the police went outside to talk to him.

Appellant and his wife, Belinda Bacchus, testified for the defense. Mrs. Bacchus testified that she and appellant had been married for nine years and had two children. Mr. and Mrs. Bacchus were separated and had not lived together since July 2003. According to Mrs. Bacchus, she first learned of Ms. Deloatch in February 2005 when she answered appellant's cell phone. Mrs. Bacchus testified that, over a year later in June 2006, Ms. Deloatch called her and threatened to kill her and her children and, as a result, she obtained a CPO to have Ms. Deloatch stay away from her. Mrs. Bacchus stated that she was aware that Ms. Deloatch and appellant were involved in a relationship but was unaware of the events of May 1, 2006 at issue in this case.

Appellant testified that he had been living at Ms. Deloatch's home since his release from a halfway house in December 2005 and paid $100 a month in rent. Ms. Deloatch's 16–year old nephew, Daryl Washington, testified that he had been living with his aunt and his cousin (Ms. Deloatch's 11–year–old son) for about a year and a half. During that period, Mr. Washington saw appellant visit his aunt in her home, but indicated that appellant had never lived in his aunt's home.

According to appellant, the May 1, 2006 incident started when he called Ms. Deloatch to tell her he was not able to pay his rent until the next day. Appellant later came to her house to talk to her and a verbal argument ensued about his failing to pay rent. Appellant denied pushing Ms. Deloatch, damaging her cell phone, or taking her purse or any money from it.

The court found appellant guilty of simple assault, second-degree theft, and destroying property. However, the court acquitted appellant of violating the CPO that had been issued in 2005, finding that the government failed to prove the required mental state for that offense.

## II. ANALYSIS

Appellant contends that the trial court erred: (1) by admitting other crimes evidence relating to his prior arrest on May 31, 2005; (2) by admitting the testimony of a government witness who was seen, prior to trial, reviewing the grand jury transcript of the complaining witness' testimony; and (3) in finding that appellant destroyed the complaining witness' cell phone.

### A. OTHER CRIMES EVIDENCE

#### 1. The Drew Rule

██ Evidence of prior bad acts that are criminal in nature and independent of the crime charged are inadmissible if offered to prove predisposition to commit the crime charged. *Drew v. United States*, 118 U.S.App. D.C. 11, 15, 331 F.2d 85, 89 (1964). However, admission of evidence of wrongful behavior is allowed at the trial court's discretion if it is relevant under one or more of the following well-settled exceptions: (1) motive, (2) intent, (3) the absence of mistake or accident, and (4) a common scheme or plan, or (5) identity. *Id.* at 16, 331 F.2d at 90. The four requirements the trial court must find in order to admit other crimes evidence are that: (1) the defendant committed the other offenses by clear and convincing evidence; (2) the evidence of the other offenses is directed to a genuine, material and contested issue in the case, (3) the evidence is logically relevant to the issue beyond demonstrating criminal propensity, and (4) the evidence is not more prejudicial than probative. *Roper v. United States*, 564 A.2d 726, 731 (D.C.1989). Regarding the last factor, the appropriate balancing test is whether the prejudicial impact of the evidence "substantially" outweighs its probative value. *Johnson v. United States*, 683 A.2d 1087, 1099 (D.C.1996) (en banc).

#### 2. The Trial Court's Ruling on the Admissibility of Other Crimes Evidence

The government moved to introduce other crimes evidence that appellant assaulted Ms. Deloatch, threatened her and damaged property in her home on May 23, 2005 to prove motive, intent, or the absence of mistake or accident in this case. The government argued that the evidence was admissible to explain the ongoing relationship between appellant and Ms. Deloatch and to establish the similarity between the facts resulting in the prior charges against appellant and the instant

case. Defense counsel argued that the evidence was inadmissible because the charges stemming from the 2005 incident were later dismissed by the government. In a colloquy with the court, defense counsel stated:

> Yes, your Honor. This is a case where there's been several cases that have been filed. We're going forward on specific counts as stated in the information. Because there's no adjudication, and I understand that if they were in fact convictions, they would come in readily, but there's no convictions.

The trial judge indicated that convictions are not a prerequisite to admitting prior bad acts evidence:

> They don't need convictions. It involves the same individual, the complainant and the defendant ... I'll allow it in as the history of the relationship for issues of motive and intent, not propensity and his background to the relationship.

### 3. *Admission of the Other Crimes Evidence*

### (a) *Absence of conviction on other crimes evidence*

We review for abuse of discretion appellant's preserved objection that the trial judge erred in admitting evidence of the May 2005 incident because the charges from that incident were dismissed and, therefore, such evidence was inadmissible under *Drew. Goines v. United States,* 905 A.2d 795, 799–800 (D.C.2006) (citations omitted) (a trial court's decision to admit or exclude evidence is reviewed for abuse of discretion). By definition, *Drew* and its safeguards are concerned with the admission of acts that are not charged in the present prosecution, *see Johnson,* 683 A.2d at 1095, and that have not been previously adjudicated. However, unadjudicated prior bad acts that constitute other crimes evidence do not preclude the admissibility of that evidence to show motive and intent, if otherwise admissible under *Drew. See, e.g., Frye v. United States,* 926 A.2d 1085, 1092 (D.C.2005) ("[p]rior instances of unlawful conduct may be admitted under a *Drew* exception although not previously adjudicated a crime"); *Flores v. United States,* 698 A.2d 474, 482–483 (D.C.1997) (evidence of prior assault was admissible although criminal charges were not adjudicated); *Mitchell v. United States,* 629 A.2d 10, 12–13 (D.C.1993) (prior bad acts evidence in a domestic violence case was admitted under a *Drew* exception even where the prior bad acts evidence was not criminally charged); *Garibay v. United States,* 634 A.2d 946, n. 2 (D.C.1993) (prior bad acts evidence was admitted under a *Drew* exception even where the prior assault case was apparently dismissed). The trial court has wide latitude in determining the admissibility of prior bad acts evidence. *See generally Frye,* 926 A.2d at 1092. On this record we find no abuse of discretion.

We also reject appellant's argument challenging the admission of the other crimes evidence based on his analysis of *Roper,* 564 A.2d at 731. In *Roper,* this court held that where two or more offenses, joined under Rule 8(a) of the D.C. Superior Court Rules of Criminal Procedure, are misjoined and the defendant is acquitted of one of those offenses, the misjoinder cannot, under a theory of mutual admissibility, be held to be harmless. *Id.* at 732. In explanation, we stated that it is "fundamentally unfair, that one could be acquitted of a crime by the trier-of-fact, yet have it held that that evidence of that same charge would have been admissible against him in another trial." *Id.* Appellant relies on *Roper* to support his argument that dismissal of the prior charges is equivalent to acquittal and, therefore, inadmissible in the instant case. His argument is flawed because, unlike the defen-

dant in *Roper*, appellant was not acquitted of the charges, but rather the previous criminal charges were dismissed for want of prosecution. Dismissal for want of prosecution—particularly for the reasons (undisputed by appellant) proffered by the government, see *supra* note 7—is not the same as being acquitted after a trial on the merits. Thus, appellant's reliance on *Roper* is unfounded.

#### (b) *The clear and convincing evidence standard*

██ Although the trial court did not specifically find clear and convincing evidence that the May 2005 incident occurred and that appellant was connected to it, appellant did not raise this issue at trial. Appellant raises this issue for the first time on appeal and therefore we review for plain error. Under plain error review, this court will only reverse the trial court's decision upon a clear showing of a miscarriage of justice. *See Harris v. U.S.*, 602 A.2d 154, 159 (D.C.1992). The plain error test requires that the appellant show: (1) error, (2) that is plain, (3) that the error affected appellant's substantial rights, and (4) that the error seriously affected the fairness, integrity, or public reputation of the judicial proceeding, i.e., a showing of manifest injustice or a miscarriage of justice. *See, e.g., Thomas v. United States*, 914 A.2d 1, 8 (D.C.2006) (illustrating the application of these elements).

The government, in addition to its proffer, asserts that Ms. Deloatch's testimony combined with the CPO and photographs of property damage in Ms. Deloatch's home established by clear and convincing evidence that appellant's prior assault on Ms. Deloatch occurred. It is well established that, unless requested by a party, the absence of explicit findings is not necessarily reversible error. *See, e.g., Daniels*, 613 A.2d at 347 (failure by the trial court to make all the necessary findings constitutes error, but such error is not necessarily cause for reversal). Here there was no such request. Notwithstanding, based on the record, we conclude that the clear and convincing evidence standard was met and that the trial court did not plainly err in failing to make the requisite finding on the record.

#### (c) *Whether other crimes evidence was irrelevant or otherwise inadmissible propensity evidence.*

██ Appellant argues for the first time on appeal that the admission of the 2005 incident as other crimes evidence was irrelevant or otherwise inadmissible propensity evidence and highly prejudicial. Arguments or issues asserted for the first time on appeal are not adequately preserved for appeal. *Miller v. Avirom*, 127 U.S.App. D.C. 367, 369–70, 384 F.2d 319, 321–22 (1967) ("[q]uestions not properly raised and preserved during the proceedings under examination, and points not asserted with sufficient precision to indicate distinctly the party's thesis, will normally be spurned on appeal"). As a result, a claim that is not properly preserved at trial is "subject to the strictures of 'plain error' review." *Thomas*, 914 A.2d at 8.

Although appellant did not raise the issue of relevance or propensity below, the trial court specifically found that the May 2005 bad acts evidence was relevant to prove motive and intent and to provide context concerning the background of the relationship between appellant and Ms. Deloatch. Although, appellant denied involvement in the May 2006 incident, we have previously held that "where the accused denies that he committed the act . . . the prosecutor is permitted, as part of his effort to prove that the particular accused did commit the act, to prove that the accused had a motive for [the act]." *See*

*Hazel v. United States,* 599 A.2d 38, 41 (D.C.1991) (quoting *(Arnold) Hill v. United States,* 600 A.2d 58, 61–62 (D.C.1991)) (internal quotations and other citations omitted).

Specifically, this court has concluded that, "[w]here one spouse or partner in a relationship commits a crime against the other, any fact or circumstance relating to ill-feeling; ill-treatment; jealousy; prior assaults; personal violence; threats, or any similar conduct or attitude by the [spouse] are relevant to show *motive* and *malice* in such crimes." *Mitchell,* 629 A.2d at 13 quoting *Gezmu v. United States,* 375 A.2d 520, 522 (D.C.1977) (internal quotations and other citations omitted) (emphasis added); *accord Rink v. United States,* 388 A.2d 52, 56 n. 4 (D.C.1978) (for purposes of admitting prior bad acts, a significant relationship can be the functional equivalent of a marriage); *Garibay,* 634 A.2d at 948 (evidence of past aggressions between the same parties is relevant to material issues, malice and motive, not to show criminal propensity); *Flores,* 698 A.2d at 482 ("evidence of previous hostility between partners is often relevant to malice, motive and intent, and is therefore admissible in domestic violence cases"); *cf. Thompson v. United States,* 546 A.2d 414, 420 (D.C.1988) (the intent exception has the potential to emasculate the other crimes rule because "it is difficult or impossible to differentiate between the intent to do an act and the predisposition to do it"). *But see Hill,* 600 A.2d at 61–62. Accordingly, the trial court did not abuse its discretion in admitting evidence of the prior assault as relevant to explain the history of the parties' relationship and the hostility between them and also relevant to appellant's motive and intent in committing the crimes charged.

■ Next, we address appellant's argument that the other crimes evidence was highly prejudicial. In examining whether the probative value of the evidence is substantially outweighed by the danger of its prejudicial effect, we review for plain error. While the trial court did not make an explicit finding that the other crimes evidence was more probative than prejudicial, it is well settled that, "[w]hen the evidence is relevant and important to one of [the Drew exceptions], it is generally conceded that the prejudicial effect may be outweighed by the probative value." *Drew,* 118 U.S.App. D.C. at 16, 331 F.2d at 90. Here the trial court admitted the disputed evidence to show motive and intent as permitted by *Drew.* The likelihood of the disputed evidence having an undue prejudicial impact is diminished because there was no jury. In bench trials the trial judge is presumed to know the purpose for which evidence may be considered, *see, e.g., Flores,* 698 A.2d at 482 (noting that the risk of the evidence having an unduly prejudicial effect on the jury is not present in a bench trial), and nothing in the record suggests that the trial judge-who credited the complainant's account—considered the May 2005 assault for any improper purpose. Therefore, we conclude that appellant has not demonstrated plain error.

## B. ADMISSION OF MS. GIBSON'S TESTIMONY

■ Before the trial started, the prosecutor informed the judge that the government had provided Ms. Deloatch's grand jury transcript to defense counsel and to Ms. Deloatch. According to the prosecutor, while Ms. Deloatch was reviewing the transcript in the hallway, "another witness was sitting next to her and did look at the pages she was looking at." In her disclosure to the court, the prosecutor identified Ms. Maria Gibson as the government witness who read along with Ms. Deloatch. Defense counsel did not object to Ms. Gib-

son's testimony or cross examine her on that issue. On appeal, however, appellant contends for the first time that the trial court erred in admitting Ms. Gibson's testimony because she viewed Ms. Deloatch's grand jury transcript prior to testifying at trial. Specifically, appellant asserts that it is probable that Ms. Gibson's testimony was not based on her own observations but instead based on information she read in the transcript of Ms. Deloatch's grand jury testimony. Since defense counsel did not object or raise this issue in the trial court, this court reviews this argument for plain error. There is no evidence that Ms. Gibson's testimony reflected that she was using or relying on information gained from allegedly reading the transcript. We find no plain error.

## C. SUFFICIENCY OF EVIDENCE RELATING TO THE DESTRUCTION OF PROPERTY CHARGE

■ Appellant also contends that the trial court erred in finding that he destroyed Ms. Deloatch's cell phone because there was no evidence corroborating Ms. Deloatch's allegation that her cell phone was damaged.

■ In reviewing a claim of sufficiency of evidence, this court views the evidence in the light most favorable to the government. *See Peery v. United States,* 849 A.2d 999, 1001 (D.C.2004). In a bench trial, this court "will not reverse 'unless an appellant has established that the trial court's factual findings are plainly wrong or without evidence to support them.'" *Id.* at 1001 (*quoting Mihas v. United States,* 618 A.2d 197, 200 (D.C.1992)). Further, this court cannot reexamine the credibility of witnesses where the trial court has had the opportunity to view and assess their demeanor. *In re E.H.,* 718 A.2d 162, 168 (D.C.1998) (citations omitted).

This court has held that in a criminal trial, "[a] conviction based upon a single eyewitness identification will not be disturbed if a reasonable juror [or fact finder] could find the circumstances surrounding the identification convincing beyond a reasonable doubt." *Frye,* 926 A.2d at 1097 (quoting (*Kevin*) *Hill v. United States,* 541 A.2d 1285, 1287 (D.C.1988) (internal quotations and other citations omitted)). Ms. Deloatch testified that appellant "stomped on" her phone and "smashed" it to pieces. Appellant denied damaging Ms. Deloatch's cell phone. The trial court, however, determined that Ms. Deloatch's testimony was significantly more credible and adopted it. Therefore, the evidence was sufficient to support a finding that appellant was guilty of destruction of property. *See generally Peery,* 849 A.2d 999.

## III. CONCLUSION

Accordingly, for the foregoing reasons, the judgment is

*Affirmed.*